[No. A114943. First Dist., Div. Three. July 18, 2007.]

AFFHOLDER, INC., Plaintiff and Appellant, v.
MITCHELL ENGINEERING, INC., Defendant and Respondent.

## Counsel

McKenna Long & Aldridge and Laurence R. Phillips for Plaintiff and Appellant.

McInerney & Dillon and Alexander Bannon for Defendant and Respondent.

## Opinion

**POLLAK, J.**—Plaintiff Affholder, Inc. (Affholder), a subcontractor, appeals from a judgment entered in favor of defendant Mitchell Engineering, Inc. (Mitchell or Mitchell Engineering), a prime contractor, on its complaint for a violation of the Subletting and Subcontracting Fair Practices Act (Pub. Contract Code, § 4100 et seq.) (the Act or Subcontracting Act).[1] Affholder contends that the trial court erred in granting Mitchell summary judgment because there is a triable issue as to whether Mitchell improperly refused to award Affholder a subcontract on a public works project after the Sacramento Regional County Sanitation District (the district), the awarding authority, issued a change order affecting the work to be performed on the project. We conclude that summary judgment was properly granted because the change order deleted the work for which Affholder had submitted a bid, and the district determined that the change order relieved Mitchell of its statutory obligation to enter a subcontract with Affholder.

### Factual and Procedural History

In October 2004, Mitchell submitted a bid to the district to be the prime contractor for the Bradshaw Interceptor: Bradshaw Pipeline and Road Improvement Project Section 6B (the project). The project consisted of the construction of sewer interceptor pipes and roadway improvements in Sacramento County, and included the construction of two segmented precast

---

[1] All statutory references are to the Public Contract Code unless otherwise noted.

concrete tunnels which were to be excavated by an "Earth Pressure Balanced Tunnel Boring Machine (EPB TBM)." Affholder, a district-approved tunnel contractor, submitted a proposal to Mitchell for the performance of the tunnel work, described as bid item Nos. 8 and 9.[2] Affholder's proposal states, "The tunnel[s] will be constructed per specifications, or better, with non-expanded bolted and gasketed segmental primary lining behind an EPB TBM." Affholder's proposal to Mitchell included $3,120,000 for bid item No. 8, the Jackson Highway tunnel, and $4,318,000 for bid item No. 9, the Morrison Creek tunnel. Mitchell listed Affholder in its bid to the district as the subcontractor for the "micro tunnel" portion of the work. On November 24, 2004, the district awarded Mitchell the contract for the project.

Before entering into a subcontract with Affholder, Mitchell submitted to the district, pursuant to Sacramento County's Construction Incentive Change Proposal (CICP) Program, a proposal to change the method of tunneling.[3] "A CICP is a formally written proposal for a contract change order." The program provides an opportunity for "the contractor to use his expertise to improve the Contract performance to create an overall reduction in the total contract price." If the proposal is approved by the awarding authority, the contractor shares in the cost savings.

When Affholder learned that Mitchell had submitted a CICP relating to the tunnel work, it demanded that Mitchell award Affholder a subcontract and include it in the CICP negotiations with the district. In April 2005, Affholder's attorney sent Mitchell a letter warning that "any attempt by Mitchell Engineering to shop other bids for the tunnel work on the project will constitute a violation of [the Subcontracting Act]." Affholder stated that it was "willing to negotiate a change order reflecting the changes set forth in Mitchell Engineering's CICP" and stated that it would pursue legal action if Mitchell did not "provide Affholder with a subcontract for the tunnel work on the project . . . ." Mitchell explained, "The work Affholder bid for and for which it was listed is being deleted by [the district]. Affholder is not entitled to a subcontract for change order work, or for work it did not bid, and for which it is not listed. There is no improper substitution."

In May 2005, Mitchell confirmed with the district an agreement to use an "alternate tunneling method for the [project]." On June 1, 2005, Mitchell sent

---

[2] Affholder's bid also included a portion of bid item No. 1, mobilization for the performance of bid item Nos. 8 and 9. However, as the bid document reflects and the trial court correctly held, the "bid is not amenable to the interpretation Affholder now claims, as its bid did not offer to perform certain contract specifications at certain contract prices."

[3] The change was to construct steel-lined tunnels by using an "open face shield machine" rather than precast concrete tunnels using an "earth pressure balanced tunnel boring machine."

Affholder and other approved tunnel contractors a request for proposals to perform the newly specified work.[4] Affholder did not submit such a proposal, instead continuing to insist that it was entitled to be awarded a subcontract to perform the originally specified work and then to negotiate a change order with Mitchell.

On June 23, 2005, the district issued "Change Order No. 1," which provides, "In accordance with County Standard Specification § 9-3, this CICP changes the specified bid tunneling work. Specification sections 02320, 02330, and 02421 are deleted in their entirety and are replaced with new specification sections 02325, 02330, 02425 and 03620. Bid item No. 8 '108' RCP Jackson Highway Crossing (Tunnel) in the amount of $3,510,000.00 is hereby deleted. Bid Item No. 9 '108' RCP Morrison Creek Crossing (Tunnel) in the amount of $4,572,000.00 is hereby deleted. A new item titled 'Open Face Shield Tunneling' is hereby added in the amount of $4,082,000.00."

On August 4, 2005, Affholder filed a superior court complaint alleging that Mitchell refused to award it a subcontract for the tunnel work in violation of the Act. After receiving Affholder's complaint, Mitchell sent a letter to the district "respectfully request[ing] the district confirm that in this situation, Affholder is not a 'listed' subcontractor on the above referenced contract, because the scope of work specified in Affholder's bid was deleted by Change Order No. 1, and that Mitchell is not required to request a substitution for the performance of Change Order No. 1, by reason of Public Contract Code section 4107(c)." In December 2005, the district confirmed that "[o]nce change order #1 was adopted by the district, Mitchell Engineering was released from [its] contractually listed tunnel subcontractor." In the same letter, the district also stated that it "has no objection to your chosen subcontractor Kiewit to perform the tunnel work . . . . Kiewit was chosen from the list of pre-approved tunnel contractors developed by the district for this work."[5]

---

[4] The request stated: "The [district] has deleted two earth pressure balance (EPB TBM) tunnels and plans to add by change order two (2) open face shield tunnels. Mitchell Engineering will be requesting interest in receiving price quotations from tunneling subcontractors to quote on two (2) conventional tunnels for this project. Tunnel subcontractors must be pre-approved by [the district] and listed on the [district] 'category 1' tunneling contractors list."

[5] It appears that Mitchell itself performed the work of constructing the newly specified steel-lined tunnels and that Kiewit Pacific Co. provided Mitchell with technical support for the construction work. Whether Mitchell itself performed the work, or the work was subcontracted to another subcontractor, has no bearing on the resolution of Affholder's claim that it was entitled to perform the tunnel work. If Affholder were correct that it was entitled to perform the revised tunnel work, performance of the work by Mitchell itself or by another subcontractor would be a substitution prohibited in the absence of one of the conditions specified in section

Mitchell moved for summary judgment and the court ultimately granted the motion. The court concluded that Mitchell did not violate the Act because "the district's Change Order No. 1 deleted the work Affholder bid to perform and added new work which Affholder did not bid and was not listed to perform." The court also found "[a]s a separate and independent basis for granting summary judgment, [that] to the extent that a triable issue of fact could be found as to whether all of Affholder's work was deleted, and to the extent that a triable issue of fact could be found as to whether Kiewit Pacific performed work to which Affholder was entitled to perform, Mitchell still did not violate section 4107 because Mitchell asked the district to confirm that Affholder was not a 'listed' subcontractor and the district stated that 'Once change order #1 was adopted by the district, Mitchell Engineering was released from [its] contractually listed tunnel subcontractor.' "[6] Affholder filed a timely notice of appeal.

## Discussion

### 1. Standard of Review

The standard of review applicable to summary judgment entered by the trial court is de novo. "Our review of a summary judgment is limited to determining upon a de novo examination whether there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law." (*Scroggs v. Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1401 [239 Cal.Rptr. 916].) " 'The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute.' [Citation.] 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.' [Citations.] The complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].)

### 2. Statutory Overview

■ The Subcontracting Act regulates contracts for public works. "Under the Act, a general contractor submitting a bid on a public contract must list each subcontractor that will perform more than one-half of 1 percent of the

---

4107, subdivision (a). (See, e.g., *W. J. Lewis Corp. v. C. Harper Construction Co.* (1981) 116 Cal.App.3d 27, 30 [171 Cal.Rptr. 806].)

[6] The trial court also relied on other "separate and independent" grounds with which we do not necessarily agree.

total bid. [Citation.] The listing does not create an express or implied contract between the contractor and subcontractor. [Citations.] Once the general contractor's bid is accepted, however, the general contractor has a statutory duty to use the listed subcontractor, unless one of [nine] statutory enumerated circumstances exist." (*E. F. Brady Co. v. M. H. Golden Co.* (1997) 58 Cal.App.4th 182, 188 [67 Cal.Rptr.2d 886], italics omitted; see § 4107, subd. (a).)[7] Under subdivision (c) of section 4107, a prime contractor may not "[o]ther than in the performance of 'change orders' causing changes or deviations from the original contract, sublet or subcontract any portion of the work in excess of one-half of 1 percent of the prime contractor's total bid as to which his or her original bid did not designate a subcontractor." (See also § 4106 ["If a prime contractor fails to specify a subcontractor . . . [for] work to be performed under the contract in excess of one-half of 1 percent of the prime contractor's total bid, . . . the prime contractor shall perform that portion himself or herself"].)

■ "If the named subcontractor is unlawfully removed or substituted for a reason not authorized by the statute, the 'removal permits the subcontractor to maintain a cause of action against the prime contractor.' [Citation.] As explained by our Supreme Court, the Act 'confers the right on the listed subcontractor to perform the subcontract unless statutory grounds for a valid substitution exist. . . . [T]hat right may be enforced by an action for damages

---

[7] Section 4107 provides in relevant part: "A prime contractor whose bid is accepted may not: [¶] (a) Substitute a person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority, or its duly authorized officer, may, except as otherwise provided in Section 4107.5, consent to the substitution of another person as a subcontractor in any of the following situations: [¶] (1) When the subcontractor listed in the bid, after having had a reasonable opportunity to do so, fails or refuses to execute a written contract for the scope of work specified in the subcontractor's bid and at the price specified in the subcontractor's bid, when that written contract, based upon the general terms, conditions, plans, and specifications for the project involved or the terms of that subcontractor's written bid, is presented to the subcontractor by the prime contractor. [¶] (2) When the listed subcontractor becomes bankrupt or insolvent. [¶] (3) When the listed subcontractor fails or refuses to perform his or her subcontract. [¶] (4) When the listed subcontractor fails or refuses to meet the bond requirements of the prime contractor as set forth in Section 4108. [¶] (5) When the prime contractor demonstrates to the awarding authority, or its duly authorized officer, subject to the further provisions set forth in Section 4107.5, that the name of the subcontractor was listed as the result of an inadvertent clerical error. [¶] (6) When the listed subcontractor is not licensed pursuant to the Contractors License Law. [¶] (7) When the awarding authority, or its duly authorized officer, determines that the work performed by the listed subcontractor is substantially unsatisfactory and not in substantial accordance with the plans and specifications, or that the subcontractor is substantially delaying or disrupting the progress of the work. [¶] (8) When the listed subcontractor is ineligible to work on a public works project pursuant to Section 1777.1 or 1777.7 of the Labor Code. [¶] (9) When the awarding authority determines that a listed subcontractor is not a responsible contractor. . . ."

against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had he not wrongfully been deprived of the subcontract.' [Citation.] [¶] The Legislature enacted this statutory scheme to address perceived problems with subcontractor financial solvency and the quality of subcontractor work on public projects. In particular, the Legislature wanted to (1) ensure the awarding authority would have the 'opportunity to . . . investigate and approve the initial subcontractors and any proposed substitutions' [citation] and (2) prevent 'bid shopping' and 'bid peddling' after the prime contract has been awarded. [Citation.] 'Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling . . . is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job.' [Citation.] 'These practices often result in financial difficulties for subcontractors and poor workmanship . . . .' " (*E. F. Brady Co. v. M. H. Golden Co., supra*, 58 Cal.App.4th at pp. 189–190, italics omitted.)[8]

### 3. *Analysis*

Mitchell contends that section 4107, subdivision (c) recognizes that the prime contractor is not bound to utilize a listed subcontractor for the performance of change order work. It argues that "it is not possible to list subcontractors who will perform change order work at the time the prime contractor submits its bid to the owner because change order work does not exist at that time," for which reason subdivision (c) makes an exception for change order work. According to Affholder, section 4107, subdivision (a) required Mitchell to award it a subcontract for the tunnel work and section 4107, subdivision (c) has no application. Subdivision (c), it argues, applies only if the prime contractor "did not designate a subcontractor" (italics omitted) and Mitchell did designate Affholder to perform the tunnel work. According to Affholder, "[a]llowing a prime contractor such as Mitchell to utilize section 4107, subdivision (c), in instances where the prime contractor had listed a subcontractor would 'vitiate the listing law' and create an exception that swallows the rule set forth in section 4107, subdivision (a)."

■ Section 4107, subdivision (c) does not provide an exception for all change order work, but only for "the performance of 'change orders' causing changes or deviations from the original contract." While most change orders

---

[8] The parties have raised no issue concerning compliance with section 20137, which relates to the issuance of change orders.

will to some extent cause a change or deletion in the originally specified work,[9] the qualification in subdivision (c) implies a qualitative and quantitative evaluation of the significance of the change. If the change order does not involve a change of significance, a prime contractor who did not list a subcontractor for the performance of the particular work may not subcontract out the work, in violation of section 4106. And, if the prime contractor did list a subcontractor to perform that work, it may not make a substitution in violation of section 4107, subdivision (a). However, if the change order does call for the performance of new work that can reasonably be construed as outside the scope of the originally specified work, subdivision (c) permits the prime contractor to subcontract out that work even though no subcontractor was initially specified. ■ Subdivision (c) does not state explicitly that if the change order calls for work outside the scope of the original contract documents the prime contractor may itself perform the new work, but additional language to that effect is unnecessary since the prime contractor is always authorized to perform work for which no subcontractor has been listed. (§ 4106.) Similarly, subdivision (c) does not authorize a substitution of subcontractors under subdivision (a) for a significant change order because, necessarily, no subcontractor previously was or could have been listed to perform the new work, and no "substitution" is involved.

In the present case, the district left no doubt that Change Order No. 1 was intended to call for the performance of new and different work not within the scope of the original specifications. The change order explicitly deleted the original tunnel-related specifications and replaced them with a new set of specifications.[10] The change order also explicitly deleted the two bid items on which Affholder had bid and replaced them with a new item, at a reduction in cost of some $4 million. In opposing summary judgment, Affholder contended that "Change Order No. 1 did not delete Bid Item Nos. 8 and 9," but the change order is in the record and unambiguously does delete those bid

---

[9] A change order is "[w]ritten authorization provided to a contractor approving a change from the original plans, specifications, or other contract document, as well as a change in the cost." (Means Illustrated Construction Dict. (3d ed. 2000) p. 117.) According to Miller and Starr, a "change order describes the extra work or materials that will be supplied and specifies the additional cost (or the reduction in the contract price) that will result from the change." (10 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 27:27, p. 81.) " 'Extra work' means work that is not required by the contract, not contemplated by the parties, and not controlled by the terms of the contract." (*Id.*, § 27:23, p. 69.)

[10] Change Order No. 1 deleted from the specifications sections 02320 (Installation of Tunnel Liner and Interceptor), and 02421 (Machine Tunneling) and replaced them with new sections 02325 (Installation of Steel Tunnel Liner and Interceptor), 02425 (Open Face Shield Tunneling) and 03620, the content of which is not disclosed in the record. The change order also deleted but then readopted section 12330 (Contact Grouting).

items. Affholder's position comes down to the argument that the differences between the original and the newly specified work are not sufficiently substantial to have justified deletion of the bid items. Instead, the argument implies, the change order should simply have modified the specifications to which bid items Nos. 8 and 9 applied, making clear that the changes were within the scope of the work on which the contract was originally bid.

The declarations submitted in support of and in opposition to the summary judgment motion present conflicting views as to the significance of the changes in the method of tunneling. This conflict in the evidence does not preclude summary judgment, however, because there is no question how these changes were treated in the change order.[11] The decision to delete the original bid items in their entirety and to replace them with a new bid item was within the discretion of the district as the awarding authority. (See *Interior Systems, Inc. v. Del E. Webb Corp.* (1981) 121 Cal.App.3d 312, 317 [175 Cal.Rptr. 301]; see also §§ 4107 [authorizing awarding agency to consent to substitution of subcontractors under specified conditions], 4110 ["A prime contractor violating any of the provisions of this chapter violates his or her contract and the awarding authority may exercise the option, in its own discretion, of (1) canceling his or her contract or (2) assessing the prime contractor a penalty in an amount of not more than 10 percent of the amount of the subcontract involved"].) If the district abused its discretion in issuing Change Order No. 1, Affholder should have taken legal action to compel the district to revise the change order. (Cf. *Interior Systems, Inc. v. Del E. Webb Corp., supra*, at p. 319 [if awarding authority approves substitution of a listed subcontractor on a statutorily recognized ground, "[a] cause of action for damages for breach of statutory duty . . . simply cannot be permitted unless the decision of the awarding authority is set aside by mandamus"].) Absent judicial invalidation, Mitchell was entitled to rely upon the action taken by the district. In doing so, it did not act unlawfully and it is not subject to liability for violating the Subcontracting Act. (121 Cal.App.3d at p. 319.)

This conclusion is not inconsistent with the decision in *Southern Cal. Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719 [79 Cal.Rptr. 319, 456 P.2d 975], in which a prime contractor was held liable for substituting subcontractors even though the substitution was approved, wrongly, by the awarding authority. There, the substitution was made on a ground that was clearly unauthorized by section 4107 and not within the discretion of the awarding authority. (71 Cal.2d at p. 726.) In the present case, the district had the authority to define and to modify the scope of the contract bid items. There is no evidence that the district acted collusively or in bad faith. Hence,

---

[11] In light of this conclusion, Mitchell's motion to submit additional evidence on appeal pursuant to Code of Civil Procedure section 909 is denied.

unless and until the district's change order was set aside, Mitchell was entitled to act upon its terms.

█ There is yet another way to view the situation, which also confirms the propriety of the summary judgment. If, as Affholder contends, the modified tunnel work should be regarded as within the scope of the original bid item so that performing the work by someone other than Affholder constituted a substitution within the meaning of section 4107, subdivision (a), Affholder failed to pursue the administrative remedy that is now available to challenge the district's approval of the substitution. Subsequent to the decision in *Southern Cal. Acoustics Co. v. C. V. Holder, Inc., supra,* 71 Cal.2d 719, section 4107, subdivision (a) was amended to provide for a hearing before the awarding authority if a listed subcontractor objects to a substitution. (Stats. 1974, ch. 899, § 1, pp. 1902–1903.) As the statute now reads, "Failure to file these written objections constitutes the listed subcontractor's consent to the substitution." (§ 4107, subd. (a).) In *Interior Systems, Inc. v. Del E. Webb Corp, supra,* 121 Cal.App.3d at pages 317–319, the court explained that the awarding authority "had the initial jurisdiction and authority to decide whether the facts warranted granting respondent permission to substitute. There was no challenge or effort to review that permission. As a result, the trial court was entitled to presume that [the awarding authority] obeyed the law and performed its legal duty. The unavoidable conclusion is that . . . [the originally listed subcontractor] may not maintain an action against the prime contractor." (*Id.* at p. 317.) "We must assume that in creating the procedure in section 4107, the Legislature intended that the results thereof should be binding on the parties unless found to be erroneous and set aside by a court of review. Here appellant never sought such review or to otherwise properly set aside [the awarding authority's] administrative finding and determination allowing respondent to substitute. The [A]ct has created a quasi-judicial remedy in the form of a hearing before the awarding authority to determine whether proper grounds exist under the act for substitution. Thus, we have at bench a case where: 'The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or "cause of action" is within the special jurisdiction of the administrative tribunal, and the courts may act only to review the final administrative determination.' " (*Id.* at pp. 318–319, italics omitted.)

Here, Mitchell requested and obtained a determination from the district that the change order relieved it of its statutory obligations to Affholder. Affholder did not challenge that administrative determination. It may be, as Affholder suggests, that it did not receive proper notice of Mitchell's request or of the

district's determination, but any procedural requirements that might be applicable (see § 4107, subd. (a)),[12] are the responsibility of the district, not Mitchell. (*W. J. Lewis Corp. v. C. Harper Construction Co., supra,* 116 Cal.App.3d at p. 30.) Affholder made no attempt to challenge the administrative determination on either procedural or substantive grounds. Assuming that the determination should be construed as authorizing the "substitution" of Affholder, Affholder failed to exhaust its administrative remedies and the propriety of the substitution must be taken as established. (*Interior Systems, Inc. v. Del E. Webb Corp. supra,* 121 Cal.App.3d at pp. 317–318.)[13]

■ The conclusion we reach is fully consistent with the objectives of the Subcontracting Act. Under the undisputed circumstances of this case, Mitchell neither deprived the district of the ability to approve of the entity performing the tunneling work nor did it engage in any form of bid shopping. (See *E. F. Brady Co. v. M. H. Golden Co., supra,* 58 Cal.App.4th at pp. 187–188; *W. J. Lewis Corp. v. C. Harper Construction Co, supra,* 116 Cal.App.3d at p. 31, fn. 3.) Because the bid items for which Affholder submitted bids were deleted, there was no opportunity for Mitchell to solicit lower bids for the same work from other subcontractors. For the newly specified tunnel work, Mitchell solicited new bids from all approved tunneling subcontractors, including Affholder. Affholder was eliminated as a subcontractor for the new tunnel work not because of the amount of its bid, but because of its refusal to submit a bid for the work specified in Change Order No. 1.

Mitchell's motion for summary judgment was properly granted.

---

[12] Section 4107, subdivision (a), provides in relevant part: "Prior to approval of the prime contractor's request for the substitution, the awarding authority, or its duly authorized officer, shall give notice in writing to the listed subcontractor of the prime contractor's request to substitute and of the reasons for the request. The notice shall be served by certified or registered mail to the last known address of the subcontractor. The listed subcontractor who has been so notified has five working days within which to submit written objections to the substitution to the awarding authority. Failure to file these written objections constitutes the listed subcontractor's consent to the substitution. [¶] If written objections are filed, the awarding authority shall give notice in writing of at least five working days to the listed subcontractor of a hearing by the awarding authority on the prime contractor's request for substitution."

[13] Affholder also makes the related argument that it was entitled to participate with Mitchell in the CICP program. Affholder's complaint, however, did not allege any violation of the CICP program provisions. Moreover, county standard specification 9-3.01 for the CICP Program, on which Affholder now relies, merely provides that "[t]he contractor and subcontractors may participate in the CICP Program. Participation of subcontractors shall be through the Contractor, and the contractor and his subcontractor must agree upon the sharing arrangement . . . ." Nothing in this section requires a prime contractor to include a listed subcontractor with which it has not yet entered a contract.

## Disposition

The judgment is affirmed.

Parrilli, Acting P. J., and Siggins, J., concurred.

A petition for a rehearing was denied August 13, 2007.