Filed 11/25/1; pub. & mod. order 12/20/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA BANK & TRUST, etc., | |
| Plaintiff and Respondent, | G047899 (consol. w/ G047910) |
| v. | (Super. Ct. Nos. 30-2010-00379838 & 30-2010-00389709) |
| DAVID LAWLOR et al., | |
| Defendants and Appellants. | O P I N I O N |
| CALIFORNIA BANK & TRUST, etc. | |
| Plaintiff and Respondent, | |
| v. | |
| COVENANT MANAGEMENT GROUP, LLC, et al., | |
| Defendants and Appellants. | |

Appeal from judgments of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

Grobaty & Pitet, Christopher L. Pitet and Erica P. Herczeg for Defendants and Appellants.

Bryan Cave, Ren R. Hayhurst, H. Mark Mersel and Lana Encheff for Plaintiff and Respondent.

*        *        *

Defendants and appellants appeal from the deficiency judgments the trial court entered after it granted plaintiff and respondent's motions for summary adjudication on their breach of guaranty claims.[1]  In opposing those motions, Defendants did not dispute any of the facts offered to establish the underlying loans, the guaranties Defendants signed, the loan defaults, Defendants' refusal to pay under the guaranties, or the amounts due and owing after California B&T nonjudicially foreclosed on the real property security for the loans.  Instead, Defendants argued their close relationship with the borrowers made Defendants primary obligors on the loans rather than true guarantors, and therefore California's antideficiency law prevented California B&T from obtaining deficiency judgments against Defendants.  In granting the summary adjudication motions, however, the trial court refused to consider Defendants' "sham guaranty" defense because Defendants failed to allege it as an affirmative defense in their answers.

We affirm because Defendants failed to present sufficient evidence to create a triable issue on their sham guaranty defense, and therefore we do not reach

---

[1]     Defendants and appellants are David Lawlor, Jerry Smith, Joanne Smith, Covenant Management Group, LLC (Covenant Management), and Heritage Capital Management, LLC (Heritage Capital).  We shall refer to them collectively as Defendants.

Plaintiff and respondent is California Bank & Trust (California B&T), as assignee through a transaction with the Federal Deposit Insurance Corporation (FDIC), as receiver for Alliance Bank (Alliance).

2

California B&T's contention that Defendants waived this issue because they failed to allege it as an affirmative defense. As explained below, Defendants failed to create a triable issue because they presented insufficient evidence to show there was no legal separation between them and the primary obligors on the loans, or that the lender who made the loan structured it in a manner to circumvent the antideficiency law.

I

FACTS AND PROCEDURAL HISTORY

Smith and Lawlor are real estate investors and developers. Along with Smith's wife, they formed several entities they used for different development projects, including Cartwright Properties, LLC, Heritage Orcas Partners, LP, Heritage Orcas VL Partners, LP, Covenant Management, and Heritage Capital. Smith, his wife, and Lawlor effectively were the only members or partners in these entities either in their own name or through one of the other entities. For example, Smith and Lawlor owned and controlled Covenant Management, which owned and controlled Heritage Capital, which was the general partner of Heritage Orcas Partners and Heritage Orcas VL Partners (collectively, Heritage Orcas).

Alliance made an approximately $2 million loan to Cartwright Properties in December 2004, and an approximately $1.4 million loan to Cartwright Properties in October 2006. Cartwright Properties signed a business loan agreement, commercial security agreement, and promissory note for each loan. To secure the loans, Cartwright Properties gave Alliance trust deeds on its office building. Alliance required Smith, his wife, and Lawlor to execute separate commercial guaranties for each loan, and also required Covenant Management to execute a commercial guaranty for the second loan. Defendants contend Alliance required Smith, his wife, and Lawlor to submit extensive information on their individual financial resources before it made either loan.

3

In June 2008, Alliance loaned Heritage Orcas approximately $10.5 million pursuant to a business loan agreement and promissory note. As security for the loan, Heritage Orcas gave Alliance a trust deed on two parcels of real property. In making the loan, Alliance required Smith, Lawlor, Covenant Management, and Heritage Capital to execute a continuing guaranty. Defendants contend Alliance required Smith and Lawlor to submit extensive information about their individual financial resources before it authorized the loan.

California B&T acquired Alliance's assets from the FDIC in February 2009. Shortly thereafter, Cartwright Properties and Heritage Orcas both defaulted on their loans and Defendants refused to pay on their guaranties. In June 2010, California B&T filed an action against Cartwright Properties, Smith, Smith's wife, Lawlor, and Covenant Management to (1) recover on the loans to Cartwright Properties; (2) judicially foreclose on the real property security for the loans; and (3) enforce the commercial guaranties. In July 2010, California B&T filed a similar action against Heritage Orcas, Smith, Lawlor, Covenant Management, and Heritage Capital to (1) recover on the loan to Heritage Orcas; (2) judicially foreclose on the real property security for the loan; and (3) enforce the continuing guaranty Defendants signed. Defendants filed their answers to the two actions in September 2010.

During the first half of 2011, California B&T conducted nonjudicial foreclosure sales under the trust deeds that secured the loans to Cartwright Properties and Heritage Orcas. California B&T purchased the property Cartwright Properties pledged for a credit bid that left an outstanding balance on the two loans of nearly $2 million. California B&T also purchased the property that secured the Heritage Orcas loan for a credit bid that left an outstanding balance on its loan of more than $13 million.

In July 2012, California B&T filed a motion in each action seeking summary adjudication on its breach of guaranty claims, which would entitle it to deficiency judgments against Defendants for the outstanding balances on all loans.

4

Defendants did not dispute that they signed the guaranties, nor did they challenge the balances California B&T claimed were due on the loans after it foreclosed on the security. Instead, Defendants argued the guaranties were sham guaranties and therefore they were actually the primary obligors on the loans, not true guarantors. As primary obligors, Defendants claimed they were entitled to the protection of California's antideficiency statutes and California B&T could not obtain a judgment against them for the difference between the value of the security and the outstanding loan balances.

The trial court granted the motions on the grounds that California B&T met its initial burden to produce evidence establishing the elements of its breach of guaranty claims, and Defendants could not create a triable issue based on their sham guaranty defense because Defendants failed to allege it as an affirmative defense in their answers. After the trial court entered judgment in both actions, Defendants timely appealed and we consolidated the two appeals.

II

DISCUSSION

A. *Relevant Summary Adjudication Standards*

""""The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute." [Citation.]'" (*Affholder, Inc. v. Mitchell Engineering, Inc.* (2007) 153 Cal.App.4th 510, 516.) A party may seek summary adjudication on whether a cause of action, affirmative defense, or punitive damages claim has merit or whether a defendant owed a duty to a plaintiff. (Code Civ. Proc., § 437c, subd. (f)(1).)[2] "A motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment." (§ 437c, subd. (f)(2).)

_____

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

5

The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.) To meet that burden, a plaintiff seeking summary adjudication on a cause of action must present evidence sufficient to establish every element of that cause of action. A plaintiff's initial burden, however, does not include disproving any affirmative defenses the defendant asserts. "Once the plaintiff . . . has met [its] burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (§ 437c, subd. (p)(1); *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 564-565.)

A triable issue of material fact exists "'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.] Thus, a party 'cannot avoid summary [adjudication] by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145 (*Dollinger*).)

We review de novo a trial court's ruling on a summary adjudication motion. (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 848.) "'[I]n practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary [adjudication].' [Citation.] 'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.' [Citation.]" (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Dollinger*, *supra*, 199 Cal.App.4th at p. 1144 ["the reviewing court '. . . reviews the trial court's ruling, not its rationale'"].)

B.     *California's Antideficiency Statutes and the Sham Guaranty Defense*

"The courts have repeatedly recognized that the antideficiency laws embodied in sections 580a through 580d and 726 reflect a legislative policy that strictly limits the right to recover deficiency judgments for the amount the debt exceeds the value of the security." (*Cadle Co. II v. Harvey* (2000) 83 Cal.App.4th 927, 932 (*Cadle*).) Indeed, "[these provisions,] enacted during the depression, limit or prohibit lenders from obtaining personal judgments against borrowers where the lender's sale of real property security produces proceeds insufficient to cover the amount of the debt." (*Talbott v. Hustwit* (2008) 164 Cal.App.4th 148, 151 (*Talbott*).) These antideficiency statutes "bar[] a deficiency judgment following nonjudicial foreclosure of real property (. . . § 580d) or following foreclosure of a purchase money deed of trust on a residence (. . . § 580b)." (*Trust One Mortgage Corp. v. Invest America Mortgage Corp.* (2005) 134 Cal.App.4th 1302, 1309.)

"[T]he [antideficiency] legislation is designed to accomplish several public policy objectives:  [¶]  '(1) to prevent a multiplicity of actions, (2) to prevent an overvaluation of the security, (3) to prevent the aggravation of an economic recession which would result if creditors lost their property and were also burdened with personal liability, and (4) to prevent the creditor from making an unreasonably low bid at the foreclosure sale, acquire the asset below its value, and also recover a personal judgment against the debtor.'  [Citations.]" (*Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308, 318 (*Torrey Pines*).) Because the antideficiency legislation was established for a public purpose "[t]he debtor cannot be compelled to waive the antideficiency protections in advance . . . and [the protections] cannot be contravened by a private agreement." (*Cadle*, *supra*, 83 Cal.App.4th at p. 932; *Torrey Pines*, at pp. 318-319.)

"[T]he protections afforded to debtors under the antideficiency legislation do not directly protect guarantors from liability for deficiency judgments. . . .  [I]f a guarantor expressly waives the protections of the antideficiency laws, a lender may

7

recover the deficiency judgment against the guarantor even though the antideficiency laws would bar the lender from collecting that same deficiency from the primary obligor." (*Cadle*, *supra*, 83 Cal.App.4th at p. 932.)

To be subject to a deficiency judgment, however, a guarantor must be a true guarantor, not merely the principal obligor under a different name. (*Cadle*, *supra*, 83 Cal.App.4th at p. 932; *River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1420 (*River Bank*).) Indeed, Civil Code section 2787 defines a guarantor as "one who promises to answer for the debt, default, or miscarriage *of another* . . . ." (Civ. Code, § 2787, italics added; *River Bank*, at p. 1420.) Where the principal obligor purports to take on additional liability as a guarantor, the guaranty adds nothing to the principal obligation and the antideficiency legislation bars a deficiency judgment based on the guaranty because it is not a promise to answer for the debt of another. (*Cadle*, *supra*, 83 Cal.App.4th at p. 932; *River Bank*, at p. 1420 ["if the guarantor is actually the principal obligor, he is entitled to the unwaivable protection of the antideficiency statutes"]; *Torrey Pines*, *supra*, 231 Cal.App.3d at p. 319-320 ["It is well established that where a principal obligor purports to take on additional liability as a guarantor, nothing is added to the primary obligation"].)

To decide whether a guarantor is a true guarantor or merely the principal obligor under a different name, "[t]he correct inquiry set out by the authority is whether the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors. [Citation.] . . . [T]he legislative purpose of the antideficiency law may not be subverted by attempting to separate the primary obligor's interests by making a related entity the debtor while relegating the true principal obligors to the position of guarantors. [Citation.] [¶] To determine whether the [purported guarantors] as individuals were primary obligors . . . such that their guaranties must be considered ineffective, we . . . look to the purpose and

effect of the agreements to determine whether they are attempts to recover deficiencies in violation of [the antideficiency law]. Similarly, . . . we may look to the contract between the parties to find the relationship of these individuals to the entire enterprise." (*Torrey Pines*, *supra*, 231 Cal.App.3d at p. 320; see also *Talbott*, *supra*, 164 Cal.App.4th at p. 152; *Cadle*, *supra*, 83 Cal.App.4th at pp. 932-933; *River Bank*, *supra*, 38 Cal.App.4th at pp. 1422-1423.)

In *Torrey Pines*, the appellate court applied these standards to affirm the trial court's ruling that the personal guaranty on a construction loan was a sham guaranty because the legal relationship between the guarantors and the borrower made the guarantors primary obligors on the loan. (*Torrey Pines*, *supra*, 231 Cal.App.3d at p. 321.) The borrower in *Torrey Pines* was a revocable living trust that a husband and wife formed several years before the loan was made. The husband and wife were the trust's settlors, beneficiaries, and trustees, and they personally guaranteed the loan to the trust. When the trust defaulted, the lender sued the husband and wife on their guaranty to recover the difference between the outstanding loan balance and the amount the lender received when it nonjudicially foreclosed on the real property security for the loan. Both the trial and appellate courts concluded the antideficiency statutes prevented the lender from obtaining a deficiency judgment because the guaranty was a sham. (*Id*. at pp. 313-316.)

Significantly, trust law at the time of the transaction made trustees personally liable for the contracts they executed on the trust's behalf. Based on that law and the husband and wife's status as the trust's settlers, beneficiaries, and trustees, the *Torrey Pines* court concluded: "There is a significant identity between these individuals and their inter vivos trust during their lifetimes, such that their trust should be deemed to be a 'mere instrumentality' [citation] through which they operated, but which never served to remove them from the status of primary obligors. Accordingly, they must be

9

considered to be primary obligors along with their trust." (*Torrey Pines*, *supra*, 231 Cal.App.3d at p. 321.)

In contrast, we concluded in *Talbott* that a husband and wife who personally guaranteed a loan to a trust they formed were true guarantors, rather than primary obligors, and therefore were not entitled to the antideficiency law's protection: "Here, the trust arrangement provided the [husband and wife] a significantly greater degree of separation than that in *Torrey Pines*. Although the [husband and wife] are the settlors of the Trust, they are secondary, not primary, beneficiaries. More importantly, [they] are not trustees of the Trust; instead, [they] used a limited liability company as trustee, thus limiting their personal liability for the Trust's obligations. The [husband and wife] became true guarantors because [their] trust arrangement 'actually removed the[m] from their status and obligations as debtors.' [Citation.] Accordingly, we conclude the trial court did not err in holding the protections of section 580a inapplicable in the present case." (*Talbott*, *supra*, 164 Cal.App.4th at p. 153.)

In *Valinda Builders, Inc. v. Bissner* (1964) 230 Cal.App.2d 106 (*Valinda Builders*), the appellate court applied the foregoing standards to conclude a guaranty in a land purchase agreement was not a true guaranty and therefore the antideficiency law prevented a deficiency judgment against the purported guarantors. The borrowers were two individuals who purchased a large parcel of land to develop as a residential subdivision. They paid a portion of the purchase price up front and agreed to give the seller a promissory note and trust deed as security. The purchase agreement provided the individuals guaranteed performance under the agreement and payment of the outstanding balance. After entering into the purchase agreement, the individuals formed a corporation in which they were the only stockholders, directors, and officers. They used that corporation to take title to the property and to execute the promissory note and trust deed, although the agreement required the individuals to do so. The seller sought a deficiency judgment against the two individuals based on the guaranty when they

10

defaulted on the loan and the real property security failed to cover the outstanding balance.  (*Id*. at pp. 107-108.) The trial court entered a deficiency judgment against the two individuals based on the guaranty, but the Court of Appeal reversed.  (*Id*. at pp. 112-113.)

The *Valinda Builders* court explained the individuals were the primary obligors under the purchase agreement and were entitled to the antideficiency law's protections because the individuals contracted with the seller in their own names and personally assumed the obligation to pay the purchase price.  The purchase agreement did not authorize them to form a corporation to take title to the property or give the seller the required promissory note and trust deed.  Moreover, the individuals and the seller never agreed a corporation or anyone other than the individuals would assume liability for the purchase price, and the seller never released the individuals from their personal and primary liability for the purchase price.  The appellate court therefore concluded the corporation was a mere instrumentality the individuals used to conduct business and it did not separate them from the liability they originally assumed as the primary obligors under the purchase agreement.  (*Valinda Builders*, *supra*, 230 Cal.App.2d at pp. 108-109.)

*Roberts v. Graves* (1969) 269 Cal.App.2d 410 (*Roberts*), presented a factual scenario very similar to *Valinda Builders*, but reached the opposite result.  In *Roberts*, an individual purchased a parcel of land for development and agreed to give the seller a promissory note and trust deed as security.  After entering into the agreement, the individual formed a corporation that took title to the property and gave the seller the note and trust deed the agreement required.  In doing so, the individual signed the note as the corporation's officer and also individually as a guarantor.  When the corporation defaulted on the loan and the real property security proved insufficient to cover the outstanding balance, the seller sought a deficiency judgment against the individual based on his signature as a guarantor.  The trial court found the antideficiency law did not apply

11

to the guaranty and entered a deficiency judgment against the individual. (*Id*. at pp. 412-414.) The Court of Appeal affirmed. (*Id*. at p. 419.)

The *Roberts* court explained the individual was a true guarantor who could not claim protection under the antideficiency law because the evidence showed the seller and the individual agreed to modify the original purchase agreement to change the personal obligation to a corporate obligation. This modification removed the individual from his status as the primary obligor on the purchase agreement and made him a true guarantor when he signed the note individually as a guarantor. The *Roberts* court concluded this legal separation of the primary obligation and the guaranty obligation distinguished the case from *Valinda Builders*. (*Roberts*, *supra*, 269 Cal.App.2d at pp. 417-418.)

Finally, in *River Bank*, the Court of Appeal applied the foregoing standards to conclude triable issues of material fact existed on a sham guaranty defense and defeated a lender's summary judgment motion on it breach of guaranty claim. A developer sought a construction loan to build an apartment complex on land he already owned. (*River Bank*, *supra*, 38 Cal.App.4th at pp. 1407-1408.) The developer intended to use his closely-held corporation as the borrower, but the bank required the developer to form a new limited partnership to act as the borrower, with the developer and his corporation guaranteeing the loan. The developer testified the bank insisted his corporation could not be the borrower or the borrower's general partner so the bank could enforce the corporation's guaranty. (*Id*. at pp. 1421-1422.) In making the loan, the bank never examined the financial condition of the entity that served as the borrower's general partner, but rather relied exclusively on the financial condition of the developer and his corporation because it considered them the true borrowers. (*Id*. at p. 1423.) The court of appeal affirmed the trial court's conclusion these facts created a triable issue on whether the guaranties were sham guaranties designed to subvert the purpose of the antideficiency statutes. (*Id*. at p. 1420.)

The *River Bank* court explained the bank would have created sham guaranties if it required the developer and his corporation to be general partners in the borrower. In that situation, the developer and his corporation would have been primary obligors on the loans under the law governing limited partnerships and therefore entitled to protection under the antideficiency law. (*River Bank*, *supra*, 38 Cal.App.4th at p. 1422.) Accordingly, the evidence showing the bank specifically structured the loan to require another layer of separation between the primary obligor on the loan, and the developer and his corporation as guarantors, created a triable issue on whether the bank acted to "subvert[] the purpose of the antideficiency laws 'by making a related entity the debtor while relegating the principal obligors to the position of guarantors.'" (*Id.* at p. 1423; see also *Union Bank v. Brummell* (1969) 269 Cal.App.2d 836, 837-838 (*Union Bank*) [antideficiency laws prevented lender from obtaining deficiency judgment against individual guarantor based on loan to corporation because lender required individual to act as guarantor rather than borrower to avoid antideficiency laws].)

C.     *Defendants Failed to Establish Triable Issues on Their Sham Guaranty Defense*

To meet its initial burden on the motions, California B&T presented evidence showing (1) Alliance made the loans to Cartwright Properties and Heritage Orcas; (2) Defendants signed the guaranties promising to pay the outstanding loan balances if Cartwright Properties and Heritage Orcas defaulted; (3) Cartwright Properties and Heritage Orcas defaulted on the loans; (4) Defendants refused to pay the outstanding loan balances under the guaranties; (5) California B&T acquired Alliance's assets, including the loans and guaranties; (6) California B&T nonjudicially foreclosed on the real property security for the loans; and (7) the amount due and owing on the loans after the nonjudicial foreclosure sales. Defendants do not dispute any of these facts and we conclude California B&T met its initial burden on the summary adjudication motions.

13

Defendants attempted to create triable issues on both motions by arguing the guaranties they signed were sham guaranties. According to Defendants, their relationships with Cartwright Properties and Heritage Orcas made them primary obligors on the loans rather than true guarantees, and therefore the antideficiency law applied to protect them from the deficiency judgments sought by California B&T.

In the action on the loans to Cartwright Properties, Defendants submitted Smith's declaration to show (1) Cartwright Properties was formed to acquire title to the real property that secured the two loans it received; (2) Cartwright Properties had no business activities other than holding title to that real property and the real property was its only asset; (3) Lawlor, Smith, and his wife were Cartwright Properties' only members, managers, and owners; (4) before making the loans, Alliance required extensive financial information from Lawlor, Smith, and his wife; and (5) Alliance relied on that information in making the loans. Defendants' separate statement, however, failed to offer any facts or evidence on Covenant Management Group's relationship to Cartwright Properties or the loans.

In the action on the loan to Heritage Orcas, Defendants submitted Smith's declaration to show (1) Heritage Orcas's "principal purpose" was to hold title to the real property security for the loan; (2) Smith and Lawlor owned and controlled Covenant Management, which owned and controlled Heritage Capital, which was Heritage Orcas's general partner; (3) the real property securing the loan was Heritage Orcas's "principal asset"; (4) before making the loan, Alliance required extensive financial information from Lawlor and Smith; and (5) Alliance relied on that information in making the loan.

The trial court, however, sustained California B&T's evidentiary objections to all the evidence Defendants offered to establish these facts and Defendants do not challenge any of those evidentiary rulings on appeal. Specifically, the trial court sustained the evidentiary objections to the portions of Smith's declarations offered to support each of the foregoing facts on the grounds his testimony lacked foundation and

14

was barred by the secondary evidence rule. The court also found the evidence to be irrelevant and conclusory. Even if we assume the relevancy objection should have been overruled and decide the matter on the merits rather than Defendants' failure to allege their sham guaranty defense,[3] Defendants' failure to challenge the other evidentiary rulings require us to exclude Defendants' evidence. Consequently, Defendants have no evidence to create a triable issue on either motion. (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1035 [we review trial court ruling granting summary judgment based on all evidence in the moving and opposing papers *except* evidence to which objections were sustained]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [same].) This failure to challenge the trial court's evidentiary rulings provides an adequate and independent ground for affirming the trial court's decision granting the motions.

Nonetheless, the result is the same if we consider Defendants' evidence because the facts they identified in their separate statements fail to establish a triable issue on their sham guaranty defense. To determine whether Defendants' guaranties are sham guaranties we must look to the purpose and effect of the parties' agreement to determine whether the guaranties constitute an attempt to circumvent the antideficiency law and recover deficiency judgments when those judgments otherwise would be prohibited. (*River Bank*, *supra*, 38 Cal.App.4th at pp. 1422-1423; *Torrey Pines*, *supra*, 231 Cal.App.3d at p. 320.) This requires us to examine whether the legal relationship between the guarantor and the purported primary obligor truly separated the guarantor

---

[3] The pleadings delimit the scope of the issues on a summary judgment motion. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) A party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.) Evidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648-649.)

15

from the principal underlying obligation, and whether the lender required or structured the transaction in a manner designed to cast a primary obligor in the appearance of a guarantor. (*River Bank*, at p. 1423 ["the legislative purpose of the antideficiency law may not be subverted by attempting to separate the primary obligor's interest by making a related entity the debtor while relegating the true principal obligors to the position of guarantors" (italics omitted)]; *Torrey Pines*, at p. 320.)

Here, Defendants failed to offer any evidence that showed a lack of legal separation between them and the primary obligors on the loans, Cartwright Properties and Heritage Orcas. In *Torrey Pines*, there was no legal separation between the husband and wife guarantors and the trust that was the primary obligor on the loan because the husband and wife also were the trust's trustees and trust law made trustees personally liable for the contracts they executed on the trust's behalf. (*Torrey Pines*, *supra*, 231 Cal.App.3d at p. 321.) In *Valinda Builders*, there was no legal separation between the guarantors and the primary obligors because they were the same people. Indeed, the individuals who guaranteed performance under the purchase agreement also were the individuals who entered into the purchase agreement as the primary obligors. The individuals remained the primary obligors even after they formed a corporation to perform their obligations because the seller never authorized them to do so nor released them from their obligations as the primary obligors. (*Valinda Builders*, *supra*, 230 Cal.App.2d at pp. 107-109; see also *Roberts*, *supra*, 269 Cal.App.2d at 412, 418 [where guarantor and primary obligor are the same person, there is no legal separation between them unless and until the other contracting party agrees to substitute a new person or entity as primary obligor].)

In contrast to the borrowers in *Valinda Builders* and *Roberts*, Defendants are not the primary obligors on the loans because they did not enter into the business loan agreements or execute the promissory notes with Alliance. Moreover, in contrast to *Torrey Pines*, Cartwright Properties's and Orcas's legal status as a limited liability

16

company and a limited partnership provide legal separation between those entities as the primary obligors and Defendants as the guarantors. On the Heritage Orcas loans, an additional layer of separation existed between Smith and Lawlor and the primary obligors because there was both a limited partnership and a limited liability company between them and the primary obligors.

Defendants suggest there was no legal separation between them, on the one hand, and Cartwright Properties and Heritage Orcas, on the other, because Defendants owned and controlled those entities, the "principal purpose" of those entities was to hold title to the real property security for the loans, and the real property security was "the entities' principal asset." These conclusory statements, however, fail to establish there was no legal separation between those entities and Defendants. Defendants presented no evidence to show these entities were not properly formed or failed to observe the necessary formalities that usually protect their owners from corporate liabilities.

Individuals may structure their own business dealings to limit their personal liability, but they must accept the risks that accompany the benefits of incorporation. For example, in *Talbott*, the husband and wife structured their trust to separate themselves from the trust's debts by making their limited liability company the trustee. (*Talbott*, *supra*, 164 Cal.App.4th at pp. 150, 153.) That structure separated them from personal liability on the loan to the trust, which made the trust the primary obligor. But that separation also made them true guarantors when they personally guaranteed the trust's loan and they could not obtain protection from a deficiency judgment under the antideficiency law. (*Id*. at p. 153.) The husband and wife offered no evidence to show the lender required that structure, and therefore there was no basis to conclude the lender structured the loan to subvert the antideficiency law.

Here, Defendants failed to offer any evidence showing that Alliance, as California B&T's predecessor in interest, requested, required, or otherwise had any involvement in selecting the entities, or the form of the entities, that were the borrowers

17

and primary obligors. Defendants offered no evidence showing they were the primary obligors on the loans or that Alliance attempted to separate Defendants' interests in the loans by making Cartwright Properties and Heritage Orcas the borrowers while relegating Defendants to the position of guarantors. (See *River Bank*, *supra*, 38 Cal.App.4th at p. 1423; *Torrey Pines*, *supra*, 231 Cal.App.3d at p. 320.) In *River Bank*, the evidence showed the bank required the developer to form a new entity to act as the borrower so the developer and his corporation could be characterized as guarantors who were unprotected by the antideficiency law. (*River Bank*, at pp. 1421-1423.) Similarly, in *Union Bank*, the lender required the individual to use a corporation as the borrower so the individual could be characterized as a guarantor who was unshielded by the antideficiency law. (*Union Bank*, *supra*, 269 Cal.App.2d at pp. 837-838.) Without some evidence to show Alliance had a role in structuring the transactions to make Defendants appear as guarantors rather than primary obligors, this case is indistinguishable from *Talbott*. Indeed, without that evidence, the record shows Defendants formed Cartwright Properties and Heritage Orcas to protect themselves from those entities' liabilities. In now arguing we should disregard the legal separation those entities provided, Defendants seek to obtain the benefits of a course of action they did not follow.

Defendants also contend Cartwright Properties and Heritage Orcas were formed to hold title to the real property security for the loans and that shows they were formed to make Defendants appear as guarantors rather than primary obligors. We disagree. Without evidence showing Alliance had some role in the formation of Cartwright Properties and Heritage Orcas, there is no basis for the conclusion those entities were designed to conceal Defendants' status as the primary obligors. Moreover, the evidence suggests Defendants formed Cartwright Properties and Heritage Orcas for their own purposes independent of the loans. Indeed, Defendants formed Cartwright Properties eight months before the first loan and over two and one-half years before the second loan. Defendants offer no evidence on when Heritage Orcas was formed.

18

Defendants next contend that Alliance's demand they submit extensive information about their financial resources before it would issue the loans shows Alliance relied on Defendants as the primary obligors. Not so. There is nothing unusual about a bank asking for financial information from a person or entity that is guaranteeing a loan. Defendants offer no evidence to show Alliance did not also require financial information regarding Cartwright Properties and Heritage Orcas. In *River Bank*, the Court of Appeal noted the bank required extensive financial information from the guarantors, but it also noted the bank did not require any financial information from the entity that was acting as the borrower. This was significant because the bank required the guarantors to form the entity that served as the borrower and therefore these facts supported the conclusion the bank considered the guarantors as the primary obligors and therefore attempted to circumvent the antideficiency law. (*River Bank*, *supra*, 38 Cal.App.4th at p. 1423.) As explained above, there is no evidence to support that conclusion here.

Finally, Defendants contend that whether they are true guarantors rather the disguised primary obligors is a question of fact that cannot be decided on summary judgment. Their status as true guarantors is generally a question of fact (*River Bank*, *supra*, 38 Cal.App.4th at p. 1422), but that does not change the outcome here because Defendants failed to present sufficient evidence to create a triable issue. Indeed, assuming all of the evidence Defendants submitted is true, there is still insufficient evidence to allow a reasonable trier of fact to find Defendants executed sham guaranties. (See *Dollinger*, *supra*, 199 Cal.App.4th at p. 1144 ["'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof'"].)

19

## III

### DISPOSITION

The judgments are affirmed.  California B&T shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA BANK & TRUST, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAVID LAWLOR et al., <br><br> Defendants and Appellants. | G047899 (consol. w/ G047910) <br><br> (Super. Ct. Nos. 30-2010-00379838 & 30-2010-00389709) <br><br> ORDER MODIFYING OPINION AND GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| CALIFORNIA BANK & TRUST, etc. <br><br> Plaintiff and Respondent, <br><br> v. <br><br> COVENANT MANAGEMENT GROUP, LLC, et al., <br><br> Defendants and Appellants. | |

It is ordered that the opinion filed in the above-entitled matter on November 25, 2013, is hereby MODIFIED as follows:

1. On page 2, the last sentence of the first paragraph in footnote one, beginning with "We shall refer to them," the word "shall" is deleted so the sentence reads:

We refer to them collectively as Defendants.

2. On page 9, the second sentence of the last paragraph, beginning with "Based on that law," the word "settlers" is deleted and replaced with the word "settlors" so the sentence reads:

Based on that law and the husband and wife's status as the trust's settlors, beneficiaries, and trustees, the *Torrey Pines* court concluded:

3. On page 12, the first sentence of the second full paragraph, beginning with "Finally, in *River Bank*, the Court of Appeal," the word "it" is deleted and replaced with the word "its" so the sentence reads:

Finally, in *River Bank*, the Court of Appeal applied the foregoing standards to conclude triable issues of material fact existed on a sham guaranty defense and defeated a lender's summary judgment motion on its breach of guaranty claim.

4. On page 14, the second sentence of the fourth paragraph, beginning with "Specifically, the trial court sustained," the word "the" is deleted before the term "evidentiary objections," and the words "on the grounds" are deleted and replaced with the word "because" so the sentence reads:

Specifically, the trial court sustained evidentiary objections to the portions of Smith's declarations offered to support each of the foregoing facts because his testimony lacked foundation and was barred by the secondary evidence rule.

22

5.　　On page 16, the first sentence of the first full paragraph, beginning with "Here, Defendants failed to offer any evidence," the words "lack of legal separation" are deleted and replaced with the words "unity of interest" so the sentence reads:

> Here, Defendants failed to offer any evidence that showed a unity of interest between them and the primary obligors on the loans, Cartwright Properties and Heritage Orcas.

6.　　On page 16, the second sentence of the last paragraph, beginning with "Moreover, in contrast to *Torrey Pines*, Cartwright Properties and Orcas's " the word "Heritage" is inserted between the words "and" and "Orcas's" so the sentence reads:

> Moreover, in contrast to *Torrey Pines*, Cartwright Properties's and Heritage Orcas's legal status as a limited liability company and a limited partnership provide legal separation between those entities as the primary obligors and Defendants as the guarantors.

7.　　On page 19, the sixth sentence of the first paragraph, beginning with "This was significant because the bank," the words "and therefore these facts" are deleted and replaced with ", which" so the sentence reads:

> This was significant because the bank required the guarantors to form the entity that served as the borrower, which supported the conclusion the bank considered the guarantors as the primary obligors and therefore attempted to circumvent the antideficiency law.

Pursuant to California Rules of Court, rule 8.1105(c), and for good cause shown, plaintiff and respondent California Bank & Trust's request to publish the opinion is GRANTED.　The opinion is ordered published in the Official Reports.　(Cal. Rules of Court, rule 8.1105(b).)

23

The foregoing modifications do not change the judgment.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.