Filed 3/9/22  Taylor v. Bochnewich Law Offices CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VICTORIA JO ISOM TAYLOR et al., | B308498 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV21283) |
| v. | |
| BOCHNEWICH LAW OFFICES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

Law Offices of John A. Belcher and John A. Belcher for Plaintiffs and Appellants.

Ford, Walker, Haggerty & Behar, Jeffrey S. Behar, Tina I. Mangarpan and Mark P. LaScola for Defendants and Respondents.

————————————

This legal malpractice action arises from a single telephone conversation between attorneys Peter Bochnewich and Daniel Katz in the underlying action challenging the 2013 estate plan of Armie Isom. In that action Bochnewich's clients, siblings Victoria Jo Isom Taylor, Cameron Troy Isom and Darci Suzanne Isom (siblings or appellants) were challenging the estate plan of their father Armie Isom. That plan left almost the entirety of Armie Isom's estate to his stepdaughter Mischelynn Scarlatelli (Scarlatelli); Katz represented Scarlatelli. On January 10, 2017, following a bench trial, the court upheld the 2013 plan.

In June 2019, the siblings brought this action against Bochnewich and his law office. In their First Amended Complaint (FAC), they alleged causes of action for fraudulent concealment, professional negligence, and breach of contract against Bochnewich, all based on a settlement offer allegedly made by Katz while the case was under submission, which Bochnewich allegedly failed to disclose. Bochnewich moved for and was granted summary judgment on the ground that he disclosed Katz's proposal in an e-mail to the siblings sent on January 6, 2017, the same day he spoke with Katz. The siblings now appeal from the order granting summary judgment and the ensuing judgment. They contend summary judgment should not have been granted because the evidence shows Bochnewich failed to accurately convey Katz's settlement offer and to take action on the proposal. We affirm the trial court's order.

## BACKGROUND

Armie Isom made a series of estate plans, with each subsequent plan giving appellants less of his estate. The 2009 plan gave appellants his most valuable property on Mission Boulevard. There is some uncertainty about the value of that property, but it appears to have been worth about $2 to $2.5 million at that time. The 2011 plan gave each appellant 25 percent of that property and gave 25 percent to Scarlatelli. The 2013 plan gave appellants $25,000 each and all of the rest of the estate to Scarlatelli. In the action challenging the estate plan, appellants alleged that the estate was worth $60 to $100 million. They sought an accounting from Scarlatelli.

The FAC alleged Katz made a settlement offer to Bochnewich while the case was under submission, a period which stretched from November 16, 2016 to January 10, 2017. Appellants alleged they only learned of the offer in March 2019, when Katz mentioned it to their appellate counsel. The FAC does not contain any details of this settlement offer, and does not mention the existence of the January 6, 2017 e-mail from Bochnewich to appellants, or their replies to that e-mail, which later served as the basis for Bochnewich's summary judgment motion.

Discovery in this action clarified that there were no other settlement offers or discussions apart from whatever Katz proposed or offered during the telephone call referenced in the January 6, 2017 e-mail. That e-mail was entitled "**<u>HIGHLY PRIVILEGED AND PROTECTED MESSAGE FROM DAN KATZ:  RE POSSIBLE RESOLUTION</u>**." The first subheading was "**<u>Further Offer to Mediate</u>**," and briefly stated that Katz called to "ask about the prospect of Mediation and settlement. I

3

feel **obligated to inform you** of this, however tentative the 'offer' or path to settlement, may have been." The next subheading was "**The gist**." In this section, Bochnewich wrote "whenever these guys (Katz or Dagrella…) speak it is never with great certainty and they always hedge their words. [¶] a. However, Katz indicated that there is '11 million in property' and appeared that a substantial portion of this, including all of the Mission Boulevard, *seemed* to be available, and possibly more. [¶] b. At the same time, I get the same run down about how hard it would be to convince his client of this, even though *he* called me." He added "5. [t]hat said, if a man comes to us with any form of olive branch, it is not wise to disregard it. [¶] 6. And again, **I am just telling you what was said** and generally discussed, as I feel obligated to report it and not dismiss any overture out of hand." In the last paragraph, Katz pointed out that a settlement would avoid risk and the delay of a possible appeal. He wrote: "All of this requires calm thought. You should feel zero pressure of any kind, about it" and "I am just conveying the message. **That's it.** Again, I do not suggest that you should do anything with this information at all, save to know that the call occurred."

There is no dispute in the evidence that the siblings received this e-mail at or near the time it was sent, and that Cameron and Darci replied to the e-mail while the matter was still under submission, and rejected the possible resolution outlined in the e-mail. On Sunday January 8, 2017, Darci replied: "Without a COMPLETE AND ACCURATE ACCOUNTING OF THE ESTATE – There is absolutely no sense in even talking about mediation or ANY type of offer." On Monday January 9, 2017, Cameron replied, through an attorney, that "Cameron and I oppose mediation, not because we believe

that the judge may rule against us, but because Scarlatelli will not agree to mediation and we do not have an accounting of trust assets." Victoria did not respond to the e-mail, but in December 2016 had told Bochnewich that she wanted to ask the trial court (posttrial) to have Scarlatelli removed as trustee and from the trust property and for a full accounting and forensic asset search. Bochnewich understood this as rejecting any further settlement discussions or mediation.

Katz was deposed in this action on April 28, 2020. Katz agreed that he spoke with Bochnewich during the first week of January 2017. The purpose of the phone call was to "discuss mediation and settlement." Katz did not make a settlement offer. As is discussed in more detail below, Katz testified that Bochnewich's e-mail was "pretty accurate" although it may have overstated the amount available for a possible settlement.

On June 4, 2020, Bochnewich moved for summary judgment on the ground that a firm settlement offer was not made, he conveyed the offer which was made by Katz in the January 6, 2017 e-mail, and the siblings rejected that offer. Appellants opposed summary judgment on the ground the information in the e-mail was not consistent with Katz's deposition testimony about the telephone call and offer and so there was a triable issue of fact concerning the accuracy and sufficiency of the e-mail. They also contended that in the e-mail Bochnewich told them to "do nothing" which was in essence a rejection of the deal when Bochnewich should have recommended it. Finally, they contended that if Bochnewich had accurately conveyed the offer, they would have accepted it. Appellants did not seek leave to amend the FAC to incorporate their theories

5

about the inaccuracies of the e-mail, their reasons for rejecting the proposal in the e-mail, or Bochnewich's duty to take action.

The trial court granted the motion for summary judgment on both substantive and procedural grounds. The court found the FAC did not give fair notice of appellants' new theories of misrepresentation and failure to recommend settlement. The court further found the e-mail accurately conveyed the proposal made by Katz and the e-mail could not reasonably be understood as telling appellants to "do nothing," or as advising them to reject the proposal.

This appeal followed.

## DISCUSSION

Appellants contend Bochnewich materially misrepresented Katz's call in the e-mail[1] and Bochnewich's inaction after

---

[1] Appellants make their contentions about misrepresentations in the section of their opening brief entitled "Statement of Facts." Headings should accurately reflect the content which follows. An appellant's opening brief should "provide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(c).) Appellants' "Statement of Facts" does not satisfy either requirement of rule 8.204. The section consists primarily of argument that the email does not accurately reflect the telephone call between Katz and Bochnewich; the last subheading is entitled "Bochnewich Materially Misrepresents the Call in an Email." This section refers to matters outside the record ("Katz is an objective witness" at AOB 9) and provides only favorable deposition testimony, in some cases stopping a quotation in mid-answer, which has the effect of creating an inaccurate impression. The section also omits significant material facts, such as appellants' responses to the email. In their reply brief, appellants cite legal

6

receiving Katz's proposal was below the standard of care. They also contend their pleadings gave notice of their theories.

We review the grant of summary judgment de novo to determine whether triable issues of material fact exist. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) We view the evidence in the light most favorable to appellants as the losing parties, and strictly scrutinize respondents' own evidence, in order to resolve any evidentiary doubts or ambiguities in appellants' favor. (*Ibid.*)

A.     *The Pleadings Do Not Give Fair Notice.*

Like the trial court, we find the pleadings do not encompass the theories appellants advanced in opposition to summary judgment. While appellants are correct that they are not required to "describe [Bochnewich's] evidence" in their complaint, they were obliged to give fair notice of the theories on which they were seeking relief. This is particularly true with respect to appellants' claim that Bochnewich advised them to "do nothing" and that this amounted to advice to reject the offer, when Bochnewich should have advised them to accept the offer. Even if appellants did not initially realize that the "settlement offer" Katz mentioned in March 2019 referred to the January 6, 2017 telephone call, once they deposed Katz, they were aware of that fact and of the substance of that call and any proposals contained therein. If they then believed that Bochnewich made a "do nothing" recommendation in the e-mail, they were required to

_____

authority in the section entitled Statement of Facts. This jumbling together of facts and legal argument in both of appellants' brief is not helpful. It can also be grounds for forfeiture, although we elect not to apply that doctrine here.

seek leave to amend the FAC to assert what is unquestionably a new theory.

"The pleadings play a key role in a summary judgment motion and ' " 'set the boundaries of the issues to be resolved at summary judgment.' " ' (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289 [167 Cal.Rptr.3d 173].) '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion. [Citations.]' (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421 [136 Cal.Rptr.3d 739]; see *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 [166 Cal.Rptr.3d 38] ['[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings,' and '[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings'].)" (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)

Appellants are correct that courts are empowered to read the pleadings broadly and in light of the facts adduced in the summary judgment proceedings. Nevertheless, there is no possible reading of the FAC which gives fair notice of a theory of professional negligence based on a failure to recommend the proposal made by Katz. We note that appellants' own behavior shows the wisdom of using the pleadings as a limitation on the

8

issues addressed in summary judgment proceedings.  They have shifted their theories on appeal, now claiming that the "proposal deserved action" and Bochnewich should have taken some action such as "[i]nform[ing] the trial court that the parties were negotiating settlement and request[ing] a delay in ruling."  This, too, is a theory not found in the pleadings.  Appellants' various and changing unpleaded theories of what Bochnewich should have done (apart from communicating Katz's proposal) do not create triable issues of fact which defeat summary judgment.

B.     *Bochnewich's E-mail Was Accurate.*

Assuming for the sake of argument that the FAC could be read broadly to encompass a claim that Bochnewich's omission of key facts from his e-mail amounted to a complete failure to convey Katz's proposal to appellants, we would find that the e-mail accurately conveyed the substance of the telephone conversation between Katz and Bochnewich, as that conversation was described by Katz.

Appellants contend that the e-mail is inaccurate because it (1) does not use the phrase "2011 estate plan"; (2) says Katz did not have authority and it would be "hard" for him to persuade Scarlatelli when Katz did in fact have authority to settle; and (3) did not mention that the trust would pay for mediation and Scarlatelli was willing to attend.  They also contend more generally that Katz made a firm offer to settle but the e-mail made it sound tentative and uncertain, and the e-mail does not contain the phrase "time is of the essence."  Appellants' contentions do not create triable issues of material fact concerning misrepresentations in the e-mail.

9

1.     2011 Estate Plan

Appellants are correct that Katz testified that he told Bochnewich that his settlement position would reflect the "2011 estate plan," but appellants do not explain the significance of Bochnewich's failure to use the specific phrase "2011 estate plan" in his e-mail.  Appellants were aware of the provisions of the 2011 estate plan, which gave them 75 percent of the Mission property.  The phrase used by Bochnewich to describe the potential settlement ("all of the Mission Boulevard") adequately conveyed the value of the potential settlement.

Appellants point out that Katz testified:  "I didn't think the e-mail set forth what we were willing to offer in terms of the 2011 estate plan."  This is not Katz's complete answer to the question posed.  He continued, explaining:  "But generally speaking, the remainder of the e-mail, I thought, seemed pretty accurate."  Katz explained that his sole disagreement with the e-mail was with the statement:  "However, Katz indicated that there is 11 million in property and appeared that a substantial portion of this, including all of the Mission Boulevard seemed to be available and possibly more."  Katz testified that he did not say "and possibly more."  He explained:  "The real estate was somewhere around 10- or $11 million at the time of the conversation, and I did propose to him that a significant proportion of it – or a portion of it would be available to his clients but only in the context of getting them back on title or back on the bequeath of Mission."  Thus, while the 2011 estate plan referenced by Katz during the telephone conversation only gave appellants 75 percent of the Mission property, Katz did not disagree with the statement "all of the Mission Boulevard seemed

available."[2]  Further, even assuming Bochnewich was mistaken in suggesting that appellants might get all of the Mission property, appellants do not explain why they would have been interested in an offer for 75 percent of the property but not all of the property as described in the e-mail.

### 2. Authority to Settle

Katz was also asked about the statement by Bochnewich that he got "the same rundown about how hard it would be to convince his client of this."  Katz indicated that he did not remember using those exact words, but it was his general practice to "remind the lawyer at the other end that the client still needs to agree.  Without going into detail, mine and Jerry's communications with Mischelynn, getting Mischelynn to provide any settlement authority was very difficult in this case."  Katz was asked:  "That's what you told him?"  Katz replied:  "Yes, and that she might change her mind about this authority."  Thus, Katz did not view Bochnewich's statement as an inaccurate summary of Katz's own statement.

### 3. Mediation Costs

Although Bochnewich did not mention the trust's payment for mediation costs in the January 6, 2017 e-mail, he did adequately convey it in a follow-up e-mail on January 8, in response to Darci Isom's statement that she was opposed to

---

[2]    Katz's testimony on this specific point reinforces his other testimony, discussed below, that he was not making a firm offer to appellants of the 2011 estate plan; all of Mission would be more than the 2011 estate plan.  An agreement approximating the 2011 estate plan was the goal, but was, in no way, a sure thing.

11

paying mediation fees. Bochnewich wrote: "Understood as to Mediator fees. --It is without question that we would not and could not pay for it . . . . I think Katz got at least that much."[3] The record citations provided by appellants do not make any reference to Scarlatelli attending the mediation.

### 4. No Firm Offer to Settle

Appellants contend more generally that Katz made a firm offer to settle the case but the e-mail made the offer sound uncertain or tentative. Appellants are simply incorrect that Katz made a firm offer to settle the case.

Appellants first contend, using italics for emphasis, that Katz testified that he had "*immediate authority to offer the 2011 estate plan.*" This is not an accurate summary of Katz's testimony. At the pages cited by appellants, Katz testified that the 2011 estate plan was "what I obtained authority for before I engaged [Bochnewich] in the phone call." Katz immediately continued: "And the phone call went something like this: [Bochnewich], I'd like to, you know, have a settlement conference or mediation." This testimony does not remotely convey that Katz had "immediate" authority to "offer" the 2011 estate plan. At a minimum, the opening reference to a settlement conference or mediation conveys that there were terms or conditions which would have to be agreed upon before appellants could receive anything.

This issue was explored in the follow-up questions. Katz was asked if he "offer[ed] the 2011 estate plan or other property

---

[3] Bochnewich testified that he raised the issue of the trust paying for mediation fees and Katz said that would not be a problem.

12

equivalent to that in [the] call?" He replied: "I didn't make any offers during the call. I didn't make – you know, 'we will settle on these terms.' I was communicating what our settlement position would be." Katz was then asked why he was offering a settlement conference or mediation. He replied that the Isom siblings had very different personalities and "being on the Mission property with [Scarlatelli] wasn't something they were keen on. Maybe a mediator could help find a different package of other properties that would be acceptable to each of them that would equate to what they would get out of Mission."

Katz also testified it was his general practice to "remind the lawyer at the other end that the client still needs to agree." Katz was asked: "That's what you told him?" Katz replied: "Yes, and that she might change her mind about this authority."

Appellants contend that Katz's own assessment that he did not communicate an offer should not control the determination of whether it was an offer. Katz was certainly in the best position to know what he intended to communicate, and his other statements during the telephone conversation show that he was offering mediation in the hope that the parties could agree on a package of assets that would settle the case. Objectively, this is not a firm offer which could have been accepted by appellants.

### 5. No Material Omissions

Katz was specifically asked if Bochnewich had left anything out of the e-mail that was discussed in the telephone conversation. Katz replied that he had told Bochnewich about "time being of the essence," because it would not be possible to settle it after the judge ruled; Katz did not see that in the e-mail. He did not believe that Bochnewich left out anything else about their conversation.

Although appellants refer to the omission of the "time is of the essence" phrase, they do not explain how it was part of the offer or what impact the phrase had on the offer. It cannot reasonably be understood as setting a date by which the offer had to be accepted. It simply reflected the reality that the parties were waiting for a court ruling which could come at any time and moot the offer. At most, the phrase would be relevant to the unpleaded claim that Bochnewich had a duty to take action such as contacting the court.

Further, Bochnewich indirectly reminded appellants of the reality of their situation by stating in the e-mail that he had checked for the court's ruling four times that day, conveying that the ruling could come at any time, although Bochnewich believed it would come at the end of the month.[4] More importantly, both Darci and Cameron rejected the proposal in Bochnewich's e-mail over the weekend, less than 48 hours after receiving, stating that they would not agree to a settlement without a further accounting of trust assets, something Scarlatelli had already rejected. Victoria had already conveyed that she was not interested in settlement without an accounting. Their quick rejection of any settlement without their conditions renders this issue irrelevant.

---

[4] As a matter of logic and reason, any settlement conference or mediation pending when the ruling was announced would be affected by the ruling, with the prevailing party likely to seek, at a minimum, more favorable terms.

14

## DISPOSITION

The judgment is affirmed.  Respondents are awarded costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:


GRIMES, Acting P. J.


HARUTUNIAN, J.*

---

*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.