Filed 8/4/23  Andersson v. Newhall School District CA2/3

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CHARLENE ANDERSSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NEWHALL SCHOOL DISTRICT et al.,<br><br>        Defendants and Respondents. | B315894<br><br>Los Angeles County<br>Super. Ct. No.<br>18STCV07659<br><br>**Order Denying Petition for Rehearing and Modifying Opinion**<br><br>[No change in judgment] |

BY THE COURT:*

It is ordered that the petition for rehearing filed July 31, 2023, is denied and the opinion filed July 18, 2023, is modified as set forth below. There is no change in the judgment.

On page 29, first full paragraph, delete the following:

On appeal, Andersson attempts to argue that the District's act of placing her on administrative leave was also an adverse employment action. However, that ground was not alleged in the pleadings and thus may not be relied upon to oppose summary judgment. (See *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings," and "[e]vidence offered on an unpleaded

claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"].)

Replace the deleted portion with the following:

In her reply brief, Andersson attempts to argue that the District's act of placing her on administrative leave was also an adverse employment action. However, this contention is conclusory and not developed in her briefing. Regardless, it is undisputed that Morse's understanding was that B.U.'s file had not arrived from the other school district or had been misplaced at the time Andersson was placed on administrative leave. Andersson concedes in her opening brief that Morse's "understanding of the situation did not change until after Andersson filed her complaint with the CDE in April 2018." Thus, the undisputed evidence would not permit a trier of fact to infer that the District placed Andersson on administrative leave in retaliation for the disclosure of Sorenson-Howe's intentional concealment of B.U.'s IEP, of which Morse was not aware.

---

*EDMON, P. J.　　　　　LAVIN, J.　　　　　HEIDEL, J.*[1]

---

[1] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/18/23  Andersson v. Newhall School District CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| CHARLENE ANDERSSON, | B315894 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 18STCV07659 |
| v. | |
| NEWHALL SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Affirmed.

Arthur Kim Law Firm and Arthur Kim for Plaintiff and Appellant.

McCune & Harber, Stephen M. Harber, and Amy A. Evenstad for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff Charlene Andersson, a teacher, appeals following the grant of summary judgment in favor of her employer, Newhall School District (the District), her former principal, Kim Sorenson-Howe, and the former Assistant Superintendent of Human Resources with the District, Michelle Morse (together, defendants). Andersson's complaint alleged that the defendants gave her a notice of unsatisfactory performance and negative performance review in retaliation for her disclosure that Sorenson-Howe concealed that a student who transferred to the District had an Individualized Educational Plan (IEP) from his prior school district and delayed the student's access to services for several weeks. Andersson brought causes of action for retaliation under Labor Code section 1102.5 and Education Code sections 44110 to 44114 and asserted claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED).

The court granted summary adjudication of Andersson's Labor Code cause of action because it concluded that the violation of law she disclosed was already known to the District and thus was not a protected disclosure. After this matter was submitted, our Supreme Court issued its opinion in *People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719 (*Kolla's*). In that opinion, the court clarified that protected disclosures include information that was already known to the employer or government agency to which it was disclosed. In light of *Kolla's*, we conclude that the court erred in granting summary adjudication of the Labor Code cause of action on the grounds that there was no protected disclosure. However, summary adjudication was nevertheless appropriate because the District

demonstrated by clear and convincing evidence that Andersson would have received a negative performance review for legitimate and independent reasons. We further conclude that Andersson has failed to carry her burden of demonstrating prejudicial error as to her Education Code, IIED and NIED causes of action. We therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Factual Background

Andersson has been a teacher with the District for over 25 years. During the relevant period, Andersson was a fifth grade teacher at Meadows Elementary School (Meadows), Sorenson-Howe was the principal at Meadows, and Morse was the Assistant Superintendent of Human Resources with the District.

#### 1.1. Concerns about Andersson's Conduct Raised to or by Sorenson-Howe Between 2016 and Early 2017

In October 2016, the parent of a child in Andersson's classroom, L.S., informed Sorenson-Howe that L.S. was so afraid of Andersson that the child wet himself rather than asking her for permission to use the restroom. His mother also reported that she was afraid of Andersson. L.S. was removed from Andersson's class.

In July 2017, the parents of a student, V.F., asked that V.F. not be placed in Andersson's class because V.F.'s sister had been in Andersson's class and "had such a negative experience [they] had to have her moved to another class."

In September 2017, Sorenson-Howe received an email from the parents of M.E. regarding their "extremely serious issues" with Andersson's treatment of their daughter. According to

M.E.'s father, since the first week of school, M.E. had reported that Andersson did not like her and picked on her. He also stated that he received a phone call from the parent of another child in the class who had come home crying because of how badly Andersson had treated M.E. Specifically, Andersson had spoken in front of the whole class about how M.E. was "stupid" and how she had gotten every math problem wrong. M.E.'s parents confirmed that M.E.'s responses were correct and that she had shown her work. M.E.'s father demanded that she be moved to another class immediately.

Sorenson-Howe forwarded the email to Morse several days later. In it, she stated that when she entered the District the prior year, she had been told that Andersson "has a personnel/HR file that is thick," but that she "ha[d] not experienced anything with this teacher that has been too alarming over the past year" and that Andersson typically corrects a situation immediately after Sorenson-Howe addressed it with her. Sorenson-Howe testified that she had "extensive conversations" with Andersson regarding M.E. and concluded that Andersson "had not intentionally done anything wrong" and that M.E. could remain in her class with appropriate support and coaching, although Sorenson-Howe "still had wonderings." Several weeks later, M.E.'s father emailed Sorenson-Howe stating that M.E. was enjoying school again. However, he also requested that a further meeting be set up with Andersson and Sorenson-Howe "to facilitate positive communication between us all, and to discuss any lingering issues."

In December 2017, Andersson missed three and a half days of school to go to Paris, France but did not obtain permission from the District to take that time off in advance. Andersson testified

4

that she was sick and that her doctor had instructed her that she should not go to school but that she could fly. In January 2018, Sorenson-Howe met with Andersson regarding the absence.

### 1.2. The Discovery of B.U.'s IEP

At the beginning of the 2017–2018 school year, a student named B.U. was assigned to Andersson's classroom. B.U. had transferred from another school district. In September or October 2017,[1] B.U.'s parents asked Andersson why he had not been pulled out of class for services as he had been in the past. Andersson arranged a meeting with the parents and with Sorenson-Howe. After speaking with the parents, Andersson and Sorenson-Howe went to the main office to look for documentation concerning services for B.U. They located the cumulative file from the other district in the office manager's office. The file was in a folder with a stamp indicating that it had been received by the school district in August 2017. Andersson and Sorenson-Howe looked at the folder and saw that the child was autistic and had an IEP in place. Sorenson-Howe told Andersson that they should tell the parents that the IEPs had not yet arrived from the other district.[2] Andersson asked, "How can we say that?" and "How

---

[1] In her special education complaint made under penalty of perjury, discussed *infra*, Andersson alleged that this meeting took place in October 2017. At her deposition, she testified that it was on or about September 15, 2017, though she did not remember the specific date it took place. In a later declaration, she stated that it was on September 15, 2017.

[2] Sorenson-Howe testified that she told Andersson that they should not say anything specific to B.U.'s parents until they had a chance to review the IEP and knew the details around the services. However, after their meeting with the parents, Sorenson-Howe testified that she

could this happen?" while they walked from the office back to the classroom and Sorenson-Howe did not respond.

Andersson testified that she did not know whether anyone was in the office at the time they located the file. According to Sorenson-Howe, the assistant principal, Janette Van Gelderen, and two other employees were also present in the office, assisted in the search for the file, and were there when it was located. After the meeting with B.U.'s parents concluded, Sorenson-Howe returned to the office and asked one of the office employees how this could have happened. After she read the IEP, Sorenson-Howe followed up with the office manager and told her they need to develop a system so that every cumulative file that came in would be reviewed before filing. Van Gelderen also participated in developing this system.

On October 9, 2017, Sorenson-Howe sent an email to the special education team stating that she had put B.U.'s folder in the mailbox of one of the team members. She further stated: "At first glance, this student has an IEP that dictates both RSP and Speech services with an eligibility of Autism. The accommodations that are included in the IEP have been happening since for [*sic*] the first day of school, thanks to Charlene's consistent effort to meet the student's needs. [¶] Obviously, we need to schedule a 30 day IEP ASAP to ensure that the services outlined in his IEP accurately reflect his current needs. In the meantime, please resume sped. services immediately." On October 23, 2017, an IEP meeting was held for B.U.

---

went back to her office, reviewed the IEP, and immediately emailed the special education team to inform them that B.U. had an IEP.

### 1.3. Andersson's Meetings with Morse in January and February 2018

On or about January 22, 2018, Andersson had a meeting with Morse. Andersson's significant other also participated via conference call. They discussed B.U. and Andersson told Morse that, after discovering B.U.'s cumulative file, Sorenson-Howe further delayed services for several weeks while pretending that the file had not arrived from the other district. Andersson did not remember whether Morse expressed surprise when she was informed of B.U. but stated that Morse "made a comment that the file was not misplaced, it didn't arrive from Burbank."

Another meeting between Morse and Andersson took place on February 8, 2018. This meeting was also attended by two union representatives. One of the representatives took notes, which indicate that there was discussion regarding B.U: "[Michelle Morse]: Was there clarification about a student w/ a former AP [¶] Autistic student [—] file never received for 5 weeks." Morse testified that she recalled the question of B.U. coming up at the February meeting with the union representatives. She did not recall the specifics but stated: "The knowledge I had at the time was that it had arrived late because he had come in from another school district."

### 1.4. Additional Concerns about Andersson's Conduct Raised to Sorenson-Howe in January and February 2018

On January 23, 2018, the mother of M.S., a student in Andersson's classroom, spoke with Van Gelderen. Van Gelderen's notes on the call indicate that M.S. felt "miserable" and "targeted" in Andersson's class. In her email to Van Gelderen after they spoke, M.S.'s mother expressed surprise that

Andersson had no problem with M.S. moving to another class. In a later email, M.S.'s mother stated that M.S. was "feeling sensitive and taking the teacher's comments personally, and it makes her feel like the teacher hates her because there's no other interaction between them."

On February 2, 2018, Sorenson-Howe had a meeting with Ms. Davis, who was the room mother for Andersson's class for the 2017–2018 school year. She stated that her son, G.B., reported that Andersson did not treat students the same when another adult was in the room. She also reported that G.B., who has asthma, felt targeted for coughing and sniffling and had been sent to the health office 11 times since the start of the school year. She stated that she and other parents were upset about Andersson being absent the last week of school in December as they had spent time arranging a holiday party and gift for Andersson. Davis stated that her son and other children were not enjoying their fifth grade year and that she was frustrated with how her son was being treated and how he felt targeted and disliked by Andersson. Davis confirmed that the summary of the meeting written by Sorenson-Howe was accurate.

In February 2018, Morse received two written complaints from teachers who felt intimidated and bullied because Andersson believed that they had exposed that she had gone to Paris while taking sick leave. On February 13, 2018, Van Gelderen sent an email to one of the teachers, Jennifer Bronstein, copying Sorenson-Howe, summarizing the conversation that the three of them had earlier that day. Bronstein informed Van Gelderen and Sorenson-Howe that Andersson had made her feel uncomfortable at a meeting that took place on February 9, at which Andersson stated: "I know when people go and speak to

Sorenson[-Howe] and Van Gelderen in the office. I know that people are looking at my [F]acebook and saying things about me." This summary was signed by Bronstein.

Sorenson-Howe also prepared a summary of their February 13 conversation, which Bronstein signed on February 22. Bronstein had conveyed that she was now uncomfortable even saying "hi" to Van Gelderen and Sorenson-Howe because of the conversation with Andersson, that she felt that Andersson was accusing her and another teacher, that Bronstein was fearful of Andersson and intimidated by her, that she worried about her reputation and felt that her character was being called into question, and that she was afraid to speak to the administration for fear of what Andersson would think of her or do to her. Bronstein prepared her own written statement, also signed on February 22. It stated that, at a meeting with Andersson and another fifth grade teacher, Andersson had made a statement suggesting that the other teachers had looked at her Facebook page and said things about her, which made Bronstein very uncomfortable. Bronstein felt that she had to get Andersson's approval for any idea before even suggesting it for the group's consideration "because [she felt] like [Andersson] is angry about every decision" Bronstein made.

On February 23, 2018, another teacher, Nicole Packer, emailed Sorenson-Howe asking if they could talk alone. On February 27, Packer thanked Sorenson-Howe for meeting with her and asked that Sorenson-Howe attend the fifth grade teachers' planning meeting that week. Packer stated that "[t]hings continue to be uncomfortable" and that "[j]ust sending this email [made her] uncomfortable because of how loosely the term 'tattling' is being thrown around by certain peers."

The next day, Packer followed up to clarify what she meant regarding "tattling." Packer reported that Andersson had said that the district is cracking down on principals and teachers and told them "that a teacher at another site was always tattling and now she's in trouble because she was always running to the principal to tell them things and for instigating." Andersson also stated that "people need to be careful because things always come back around and someone isn't safe just because someone thinks they are close with the principal" and that Bronstein and Packer should "make sure [they] talk to our teammates because things come back around." Packer wrote that Andersson "continues to bring up this topic" and assumed it was because Andersson believed that Bronstein and Packer "had something to do with her Facebook picture(s) situation." Packer concluded by stating that she almost went to urgent care the night before because of how physically ill the situation was making her.

### 1.5. Andersson is Placed on Paid Administrative Leave

On February 28, 2018, Andersson was placed on paid administrative leave so the District could conduct an investigation and to protect both Andersson and those who had brought complaints against her. Morse testified that the signed statements from the other teachers were only part of the decision to put her on leave. She also cited Andersson's concerns about C.V., a student who had recently been placed in her class, and about the request for a doctor's note justifying her absence in December. Morse followed up on these concerns and learned that parents were "having concerns around their students being bullied and mistreated in . . . Mrs. Andersson's classroom." She was also informed of an allegation that Andersson had discussed

a current student with a former District employee in violation of the Family Educational Rights and Privacy Act. Morse testified that all these factors led to the decision to place Andersson on paid administrative leave.

Morse sent Andersson an email asking her to come to a meeting at the District office after school. Andersson indicated that she could not attend because she had a prior engagement. Sorenson-Howe called Andersson on her classroom phone and yelled at her, instructing her to go the meeting. Andersson became upset and began experiencing anxiety. She called the office and asked for a substitute teacher and then left the building. Sorenson-Howe came out to the parking lot and told her not to leave and that Morse could meet them in the parking lot shortly. Andersson told Sorenson-Howe that she felt sick and that Sorenson-Howe was causing her anxiety. Sorenson-Howe was standing between Andersson and her car door and Andersson asked her to move. Andersson eventually made her way into the car and left.

Later that day, Andersson received a communication from the District informing her that she was being placed on administrative leave. The individual she spoke with did not know why she was being placed on leave but told her that it was for her own protection.

### 1.6. Andersson Files a Complaint with the California Department of Education Concerning B.U.

On April 12, 2018, while on administrative leave, Andersson filed a special education complaint with the California Department of Education (CDE). With respect to B.U., she alleged that, in October 2017, B.U.'s parents approached her and asked why their son had not been pulled out of class for services.

11

Andersson called Sorenson-Howe to join the meeting and, after briefly speaking with the parents, they went to the office to see if there was a folder for B.U. related to his services. Eventually they located the folder, which had been misfiled, and learned that he had two IEPs. Sorenson-Howe stated that they should tell the parents that the file had not yet arrived and did so.

In June 2018, the CDE issued its investigation report on these allegations, which was based on the investigator's review of documents provided by Andersson and the District, as well as conversations with Andersson, B.U.'s parent, the District, and B.U.'s previous district. The report found that B.U. entered the district with an IEP from the previous district, which was discovered October 9 and an IEP meeting was convened on October 23, 2017. The report concluded that the District was out of compliance with 34 Code of Federal Regulations part 300.323(c)(2), because it did not provide the required speech and language and resource specialist program services to B.U. when he enrolled in the District on August 17, 2017.

### 1.7. The District Issues Andersson a Notice of Unsatisfactory Performance and Negative Performance Review

While Andersson was on leave, Morse investigated the claims against Andersson and concluded that they were substantiated. When Andersson returned to work in August 2018, she was presented with a "Notice of Unprofessional Conduct and Unsatisfactory Performance" (Notice) that was drafted and signed by Morse and received a negative performance review. The Notice identified approximately 70 instances of unprofessional conduct and unsatisfactory performance based on the observations of parents, students, behavior support

12

specialists, staff, and other teachers. In addition to the misconduct discussed above, the Notice identified incidents in which Andersson made other teachers feel as if they did not know what they were doing; inappropriately asked a student, C.V., whether he had ever punched another student in the face in front of the whole class; left her students unsupervised by a certificated employee during instructional time; and made inappropriate comments about having to wait for B.U. and about B.U. choosing not to listen in front of the entire class. The Notice stated that Andersson's acts were inconsistent with the policies of the District's governing board, its Code of Ethics, and with the California Standards for the Teaching Profession.

### 1.8. The District Investigates Andersson's Claims of Retaliation

In November 2018, an attorney for the District contacted an independent firm to investigate Andersson's allegations that she had been retaliated against. The firm interviewed District employees, parents, and reviewed emails and documents before issuing a report in January 2019. The report concluded that there was no evidence that Sorenson-Howe and Morse issued frivolous written discipline or retaliated against Andersson. It further concluded that there was no evidence that Sorenson-Howe concealed B.U.'s IEP or falsely represented that it had not arrived.

## 2. Procedural Background

In December 2018, Andersson filed a complaint against the District, Sorenson-Howe, and Morse, asserting six causes of action: (1) retaliation under Education Code section 44110 et seq. (against all the defendants); (2) retaliation under Labor Code

section 1102.5 (against the District); (3) false imprisonment (against the District and Sorenson-Howe); (4) IIED (against the District and Sorenson-Howe); (5) NIED (against the District and Sorenson-Howe); and (6) a petition for writ of mandate commanding the District to comply with Education Code section 44663, subdivision (a). The three acts of retaliation identified in the complaint were: (1) Sorenson-Howe's alleged verbal harassment of Andersson in the parking lot; (2) the issuance of the Notice, negative performance evaluation, and the requirement that Andersson enter the Peer Assistance Review program; and (3) the issuance of "frivolous conference memoranda" on August 24 and 29, 2018. The court sustained a demurrer as to the false imprisonment cause of action.

In January 2021, the defendants filed a motion for summary judgment, or in the alternative, summary adjudication. The court granted the motion. With respect to the retaliation cause of action under the Labor Code, the court concluded that Andersson had not made a protected disclosure because the failure to provide services to B.U. was known at the time of Andersson's disclosures. The court concluded that summary adjudication was appropriate with respect to the Education Code cause of action because Andersson failed to rebut the District's evidence or arguments that the disclosure concerned an internal personnel matter rather than an "improper governmental activity." With respect to the intentional and negligent infliction of emotional distress causes of action, the court concluded that the claims were not grounded in statutory authority, as was required to bring a claim against the District. With respect to the intentional infliction of emotional distress claim against Sorenson-Howe, the court found that Andersson had failed to

14

address how Sorenson-Howe's conduct in the parking lot was "extreme and outrageous conduct" rather than personnel management. As to the negligent infliction of emotional distress cause of action, the court concluded that Andersson had presented no arguments or evidence with respect to duty.[3]

Andersson timely appealed.

Following oral argument and the submission of this matter, the Supreme Court issued its opinion in *Kolla's*, which held that a protected disclosure under Labor Code section 1102.5, subdivision (b), encompasses reports or complaints of a violation of law made to an employer or agency even if the recipient already knows of the violation. This court invited the parties to submit supplemental letter briefs addressing the impact, if any, of *Kolla's* on this appeal and the parties have done so.

## DISCUSSION

Andersson contends that the court erred in its determination that she did not engage in protected activity because she disclosed facts that were already known. Andersson argues that summary adjudication of the Labor Code cause of action must be overturned in light of *Kolla's*. Andersson further argues that she has a statutory basis for asserting her IIED and NIED claims against the District, citing the statutes under which she asserted her retaliation causes of action. She also contends that she submitted substantial evidence that Sorenson-Howe

---

[3] Both parties made evidentiary objections, which the court declined to consider for the parties' failure to comply with the California Rules of Court, rule 3.1354. The court also granted summary adjudication as to the sixth cause of action for failure to present evidence or argument. Andersson does not contest these rulings on appeal.

engaged in extreme and outrageous conduct for purposes of the IIED claim and that Sorenson-Howe had a duty not to retaliate for purposes of the NIED claim.

The defendants contend that the trial court's order with respect to the retaliation causes of action should be affirmed because Andersson's disclosure was not protected. The defendants argue that *Kolla's* is distinguishable on its facts. They claim that Andersson's disclosures were not protected because she did not blow the whistle on a violation of law but reported a disagreement with how her manager handled the IEP situation, and because the violation was already resolved at the time Andersson reported it. The defendants also argue that, even if Andersson's disclosures were protected under *Kolla's*, summary judgment was still appropriate on other grounds.

The defendants further contend that Andersson has failed to identify any statute authorizing the assertion of common law torts against the District. They also argue that the IIED claim against Sorenson-Howe fails because the confrontation in the parking lot was a management action and thus not unfair or outrageous conduct. Finally, the defendants contend that the NIED cause of action fails because Sorenson-Howe did not have a duty not to approach Andersson in the parking lot and because the retaliation statutes do not create a duty of care for purposes of a tort claim.

We hold that the court erred in granting summary adjudication of the Labor Code cause of action on the ground that the violation of law was already known to the District. However, summary adjudication of the Labor Code cause of action was nevertheless appropriate because the District demonstrated by clear and convincing evidence that it would have given Andersson

16

a negative performance review for legitimate, independent reasons even had she not engaged in protected conduct. We further conclude that Andersson has failed to carry her burden of demonstrating prejudicial error as to the Education Code, NIED, and IIED causes of action. We therefore affirm.

## 1.    Standard of Review

The standard of review in an appeal from a summary judgment is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citation.] Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities [citation]. 'Thus, while the court in determining

17

a motion for summary judgment does not 'try' the case, the court is bound to consider the competency of the evidence presented.' [Citation.]" (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196–197.)

"[I]t is well settled that on appeal following summary judgment the trial court's reasoning is irrelevant . . . . We exercise our independent judgment as to the legal effect of the undisputed facts [citation] and must affirm on any ground supported by the record. [Citation.]" (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.) "[O]ur review is governed by a fundamental principle of appellate procedure, namely, that ' "[a] judgment or order of the lower court is *presumed correct*," ' and thus, ' "error must be affirmatively shown." ' [Citation.] Under this principle, plaintiff bears the burden of establishing error on appeal, even though defendants had the burden of proving their right to summary judgment before the trial court. [Citation.] For this reason, our review is limited to contentions adequately raised and supported in plaintiff's brief. [Citation.]" (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.)

2. **Andersson has failed to demonstrate that the court erred in granting summary adjudication of her Education Code cause of action.**

Andersson begins her discussion of whether she made a protected disclosure without stating the cause or causes of action to which her arguments relate. From the first several pages, one might fairly assume that she is addressing only the Labor Code cause of action, as she refers to no other statute. Andersson subsequently contends that the trial court erroneously granted summary adjudication of her causes of action under the Labor

18

Code *and* the Reporting by School Employees of Improper Governmental Activities Act (Ed. Code, §§ 44110–44114), but this is the only point at which she cites the Education Code with respect to her claim that the defendants retaliated against her. Andersson does not identify which specific section of the Act discusses protected disclosures, quote or paraphrase the relevant language, or discuss how the court erred in its conclusion that the undisputed evidence did not satisfy those requirements. This issue is not remedied in her reply brief, which cites the Education Code only when discussing the IIED and NIED causes of action.

"It is the responsibility of the appellant, here plaintiff[], to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] In addition, citing cases [or statutes] without any discussion of their application to the present case results in forfeiture." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) Andersson has forfeited her claim that the court erred in granting summary adjudication of her cause of action under the Education Code.

3.   **Although the court's ground for granting summary adjudication of the Labor Code cause of action was error, summary adjudication was proper.**

We turn to the issue of whether Andersson has established a triable issue of material fact with respect to her retaliation cause of action under the Labor Code. Section 1102.5, subdivision (b), provides that an employer "shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency" or "to a person with authority over . . . another employee who has the authority to investigate, discover,

or correct the violation of noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ."

"In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (Lab. Code, § 1102.6.)

In other words, three elements must be satisfied to make out a prima facie case of whistleblower retaliation: (1) the plaintiff engaged in protected activity; (2) the plaintiff was subjected to adverse employment action; and (3) a causal link between the two previously stated elements. Once an employee makes a prima facie case under Labor Code section 1102.5, the employer must "demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718 (*Lawson*); see also Lab. Code, § 1102.6.)

The court granted summary adjudication of the Labor Code cause of action because it held that Andersson did not make a protected disclosure because the violation of law she disclosed was already known. Following the Supreme Court's

interpretation of Labor Code section 1102.5, subdivision (b) in *Kolla's*, we cannot affirm summary adjudication of the Labor Code cause of action on that ground. However, we conclude that the District has met its burden of demonstrating that it would have taken the same actions for legitimate, independent reasons under Labor Code section 1102.6.

### 3.1. After *Kolla's*, the court's order granting summary adjudication on the ground that Andersson did not make a protected disclosure cannot stand.

Under prior Court of Appeal decisions, the reporting of already known facts did not constitute a protected disclosure under the Labor Code or the Act. (See *Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 858–859; see also *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1552 [a "report of 'publicly known' information or 'already known' information is distinct from a rule in which only the first employee to report or disclose unlawful conduct is entitled to protection from whistleblower retaliation"], disapproved of on other grounds by *Lawson, supra,* 12 Cal.5th 703.) However, after this matter was submitted, the Supreme Court issued its opinion in *Kolla's*, which expressly disapproved of *Mize-Kurzman*, on which the court relied.

In *Kolla's*, an employee complained to her supervisor that she had not been paid wages for her previous three shifts and her supervisor terminated her employment and threatened to report her to immigration authorities. (*Kolla's*, *supra*, 14 Cal.5th at p. 721.) The employee informed the Division of Labor Standards Enforcement (DLSE) of the Department of Industrial Relations and, after the employer and supervisor declined to accept DLSE's proposed remedies, the Labor Commissioner sued them for

21

violations of the Labor Code. (*Ibid*.) The trial court ruled against the Labor Commissioner as to the section 1102.5, subdivision (b) cause of action on the grounds that the employee reported her complaints to her employer rather than a government agency. (*Ibid*.) The Court of Appeal concluded that this ruling was error because it was based on an outdated version of section 1102.5 that only protected disclosures made to government agencies but held that there was no protected disclosure because the supervisor had perpetrated the violation and thus was already aware of it. (*Id*. at pp. 721–722.) According to the Court of Appeal, a disclosure is only " 'the revelation of something new, or at least believed by the discloser to be new, to the person or agency to whom the disclosure is made.' " (*Id*. at p. 722.)

The Supreme Court reversed. It agreed with the Labor Commissioner that, under dictionary definitions of "disclose," "information disclosed need not be previously unknown to the recipient" and that "[t]o 'make [something] openly known' [citation] or 'open [something] up to general knowledge' [citation] does not require that the 'something' be unknown to the current recipient." (*Kolla's, supra*, 14 Cal.5th at p. 725.) The Supreme Court further observed that the legislative history of section 1102.5 supported a broad reading of "disclose." (*Id*. at p. 728.) The statute, as amended in 2013, "does not limit its protections to a disclosure directed to a person with the authority to 'discover' the alleged violation (i.e., a person who previously did not know about the alleged violation); instead, it also protects a disclosure made to a person with the authority to 'investigate . . . or correct' the violation, even if the disclosure does not cause the person to 'discover' the violation." (*Id*. at p. 729.)

The Supreme Court observed that the rule adopted by the Court of Appeal "would exclude from section 1102.5(b)'s protection a worker who discloses a workplace violation to his or her employer or to a government or law enforcement agency with the knowledge that another employee has disclosed the same violation, or with the unreasonable belief that no one has disclosed the violation. But denying protection for these corroborating disclosures undermines the purpose of section 1102.5(b). Because multiple disclosures would not receive protection, employers and government agencies would miss out on potentially corroborating information that may be valuable in investigating and confirming violations of the law. Without antiretaliation protections, an employee who knows that his or her coworker has already disclosed a violation may be hesitant to disclose the same violation." (*Kolla's*, *supra*, 14 Cal.5th at p. 730.) The Supreme Court further stated that nothing in section 1102.5 requires an employee to believe that they were revealing new information. (*Id.* at p. 731.) "The only reference to an employee's state of mind in section 1102.5(b) is the requirement that the employee 'has reasonable cause to believe that the information discloses a [legal] violation.' [Citation.] The statute thus does not protect employees who do not believe or who unreasonably believe that the information they are disclosing shows a violation of the law. However, there is no indication that an employee must also have reasonable cause to believe that he or she is the first to report the alleged violation, and we see no basis for reading such a requirement into the statute." (*Ibid.*)

In response to concerns from an amicus curiae that the court's interpretation "threatens 'to convert everyday workplace disputes into whistleblower cases[,]' " the Supreme Court noted

that the protections of section 1102.5, subdivision (b), "apply only where the disclosing employee 'has reasonable cause to believe that the information discloses a [legal] violation' " and that "an employer accused of retaliation in violation of section 1102.5(b) can rebut the charge by 'demonstrat[ing] by clear and convincing evidence that the alleged [retaliatory] action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.' [Citation.]" (*Kolla's*, *supra*, 14 Cal.5th at p. 734.)

Under the Supreme Court's interpretation of Labor Code section 1102.5, subdivision (b), in *Kolla's*, the fact that the District was already aware of the violation of law reported by Andersson is not dispositive. Our Supreme Court stated that a disclosure for purposes of Labor Code section 1102.5 "does not require that the 'something' [disclosed] be unknown to the current recipient." (*Kolla's*, *supra*, 14 Cal.5th at p. 725.) Nor does section 1102.5 require that the individual making the disclosure believe that the information disclosed was not already known to employer or government entity to whom she makes the disclosure. "The only reference to an employee's state of mind in section 1102.5(b) is the requirement that the employee 'has reasonable cause to believe that the information discloses a [legal] violation.' [Citation.]" (*Id.* at p. 731.) Thus, as long as Andersson believed that she was disclosing a violation of law, her disclosure was protected even though she had reason to believe that the violation of law was already known to the District.

The defendants contend that, unlike in *Kolla's*, Andersson's disclosure to Morse only concerned her assertion that Sorenson-Howe lied or mishandled the situation, which was not a violation of the law but a personnel matter. They further argue that the

24

disclosure is not protected because the violation of law was resolved at the time that Andersson made her purported disclosures to Morse. The defendants also assert that the April 2018 disclosure to the CDE "could not be the reason for any alleged retaliation, as Appellant was already on leave for unrelated reasons while her reported misconduct was being investigated at that time."

It is not clear that Andersson's disclosure to Morse was exclusively a personnel matter. The Supreme Court observed that additional reports regarding the same violation of law can corroborate or assist in the investigation or correction of a known violation. (*Kolla's*, *supra*, 14 Cal.5th at pp. 730–731.) *Kolla's* also reaffirms that Labor Code section 1102.5 " 'reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation.' [Citations.]" (*Id.* at p. 723.) There does not appear to be any dispute that the failure to provide services to B.U. was a violation of law or that Andersson reasonably believed it to be one. Andersson's disclosure that the delay in providing services was intentional clearly related to that violation and provided additional information that could have been relevant to the District in investigating and correcting the issue.

We agree with the defendants that, unlike in *Kolla's*, the undisputed evidence supports that the District took steps to address the violation of law—the failure to timely provide B.U. with the services to which he was entitled under 34 Code of Federal Regulations part 300.323—before Andersson's disclosures to Morse were made. The defendants express concern that a holding that disclosures of known and resolved violations of law are protected would incentivize abuse of Labor Code

25

section 1102.5, subdivision (b). However, the causation requirement for a prima facie case of retaliation and the affirmative defense for employers set forth under Labor Code section 1102.6 guard against such abuse. Further, a reasonable trier of fact could conclude that correcting the violation includes addressing the circumstances that led to the violation, not merely providing B.U. with the services to which he was entitled. Whether the violation was caused by intentional delay or a simple filing error is relevant to that resolution. Considering the principles set forth in *Kolla's*, we are reluctant to hold that Andersson's disclosures to Morse, which pertained to a violation of law and provided further information and context regarding that violation, are not protected.

Even if the disclosures to Morse pertained only to personnel matters, Andersson's later disclosure to the CDE did not simply concern Andersson's disagreement with how Sorenson-Howe managed the situation with B.U. Rather, Andersson reported her belief the District's failure to provide B.U. with services prior to October 2017 violated 34 Code of Federal Regulations part 300.323 and the CDE concluded that the District was out of compliance. The CDE ordered training in connection with its conclusion that the District had violated 34 Code of Federal Regulations part 300.323 with respect to B.U., which indicates that it did not consider the matter entirely resolved or corrected at the time Andersson made her disclosure. The defendants contend that the April 2018 disclosure to the CDE could not possibly be the basis for retaliation because Andersson was already on leave to allow the District to investigate complaints against her, but this argument goes to whether there was a

causal connection between the disclosure and alleged retaliation, not whether the disclosure was protected.

Thus, a reasonable jury could conclude that Andersson made at least one protected disclosure and that the court erred in granting summary adjudication of the Labor Code cause of action on the ground that Andersson did not make a protected disclosure.

### 3.2. Summary adjudication of the Labor Code cause of action was nevertheless appropriate.

Having concluded that the ground on which the trial court relied in granting summary adjudication is not valid, we consider whether summary adjudication of the Labor Code cause of action was appropriate on a ground not reached by the trial court.

Although we may affirm an order granting summary adjudication on any ground supported by the record (*Jimenez v. County of Los Angeles*, *supra*, 130 Cal.App.4th at p. 140), Code of Civil Procedure section 437c, subdivision (m)(2), imposes a limitation. In relevant part, it provides: "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs."

Courts of Appeal have held that "[t]he purpose of section 437c, subdivision (m)(2) has . . . been fully met" and supplemental briefing is not required where "the parties have already been provided 'an opportunity to present their views on the issue,' " including where "[d]efendants directly addressed the issue in their briefs, and plaintiffs addressed it in their reply brief." (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39; accord, *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th

1134, 1147 [concluding supplemental briefing not required pursuant to Code of Civil Procedure section 437c, subdivision (m)(2) where issue was raised below and on appeal].) The parties briefed the issues of whether there was a causal connection between the disclosure and adverse employment action and whether there was a legitimate, nonretaliatory ground for the adverse employment action both below and on appeal. Thus, we conclude that the requirements of section 437c, subdivision (m)(2), have been satisfied as to these alternative grounds, which we now address.

### 3.2.1. Causal Connection

With respect to the causal connection element, an employee need not show that retaliation was the " 'but for' cause of the employment decision" but must show that retaliation was at least a "substantial motivating factor" for the decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 230, 232.) " ' "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.' " [Citation.]' [Citation.] 'Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.' [Citation.]" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69–70 (*Morgan*).) A causal connection can also be demonstrated by a "sudden change of position" toward an employee after a disclosure is made. (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 141, disapproved of on another ground by *Lawson, supra,* 12 Cal.5th 703.)

" '[W]e identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citation.]' " (*Scolinos v. Kolts* (1995) 37 Cal.App.4th 635, 639, italics omitted.) Andersson's complaint alleged that the acts of retaliation were Sorenson-Howe's attempt to prevent her from leaving campus in February 2018 and the Notice and negative performance review she received upon her return from leave in August 2018.[4] On appeal, Andersson attempts to argue that the District's act of placing her on administrative leave was also an adverse employment action. However, that ground was not alleged in the pleadings and thus may not be relied upon to oppose summary judgment. (See *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings," and "[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"].)

With respect to the first claimed act of retaliation, the undisputed evidence establishes that Sorenson-Howe was not

[4] The complaint also alleges that the defendants retaliated against her with two "frivolous conference memoranda on August 24 and 29, 2018." These memoranda do not appear in the record. The only evidence of them cited on appeal is Andersson's statement in her declaration that she was subject to "further unfounded written and verbal discipline beginning in August 2018." This vague, conclusory statement is not evidence sufficient to create an issue of fact. Thus, we do not consider the issue of causation with respect to these purported acts of retaliation.

present at the January or the February meetings at which Andersson made her disclosures to Morse. Andersson does not contend that Sorenson-Howe was informed of what was discussed or identify any evidence supporting that Sorenson-Howe was aware of the substance of the discussions on February 28, 2018, when she confronted Andersson in the parking lot. Thus, Andersson has failed to identify a triable issue of material fact of a causal connection between her January and February disclosures to Morse and Sorenson-Howe's verbal harassment of her. (See *Morgan*, *supra*, 88 Cal.App.4th at p. 73 ["In the absence of evidence that the individuals who denied appellant employment were aware of his past filing of a grievance, the causal link necessary for a claim of retaliation can not [*sic*] be established."].)[5]

With respect to the Notice and negative performance review, the undisputed evidence does not establish any "sudden change of position" with respect to Andersson. (*Mokler v. County of Orange*, *supra*, 157 Cal.App.4th at p. 141.) By the time Andersson made her complaint to the CDE, the administration at Meadows had received multiple complaints from parents and teachers concerning Andersson and an investigation into the various complaints against her was already underway. However, a causal link may also be established by circumstantial evidence, such as " ' " 'the proximity in time between the protected action

---

[5] Adverse employment actions are those that "materially affect[] the terms, conditions, or privileges of employment." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1051.) Although we have doubts as to whether a reasonable jury could conclude that Sorenson-Howe's attempt to prevent Andersson from leaving the school was an adverse employment action, the District did not advance this argument below.

and allegedly retaliatory employment decision.'" [Citation.]' [Citation.]" (*Morgan*, *supra*, 88 Cal.App.4th at pp. 69–70.) Although the District's representatives had received reports of misconduct prior to any disclosures, and additional reports between the various alleged disclosures, we do not agree with the defendants that the complaint to the CDE could not have had any bearing on the Notice and negative performance review as a matter of law because an investigation against Andersson was already underway. Even if the CDE's findings corroborated Sorenson-Howe's version of events, it is possible that Andersson's decision to escalate the issue to the CDE nevertheless caused resentment. For purposes of argument, we will assume that a reasonable juror could conclude that the proximity in time between Andersson's disclosure to the CDE and the negative performance review provides circumstantial evidence that her disclosures motivated the negative performance review.

### 3.2.2. Clear and Convincing Evidence of an Independent and Legitimate Reason for the Adverse Actions

Even where a plaintiff establishes a prima facie case of retaliation, Labor Code section 1102.6 provides a "statutory affirmative defense to employer liability for retaliation in violation of the whistleblower statute when the employer can show that it would have made the same decision for legitimate and independent reasons." (Assem.Com. on Judiciary, Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended May 29, 2003; *Lawson*, *supra*, 12 Cal. 5th at p. 712.)

Under Labor Code section 1102.6, the defendants must identify clear and convincing evidence to show that no reasonable jury could find that the District would not have given Andersson

31

a negative performance review for legitimate, independent reasons. " 'Clear and convincing' evidence requires a finding of high probability." (*In re Angelia P.* (1981) 28 Cal. 3d 908, 919, superseded by statute on another ground as stated in *In re Cody W.* (1994) 31 Cal.App.4th 221, 229–230.) Although this standard of proof "demands a degree of certainty greater than that involved with the preponderance standard" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998), it does not require absolute certainty. (*Estate of Moramarco* (1948) 86 Cal.App.2d 326, 333.)

The District has carried its burden. Approximately a month into the 2017–2018 school year, a parent wrote an email to Sorenson-Howe in which he claimed that Andersson's treatment of his child was so bad that a classmate cried to her parents about it. He further stated that Andersson had called his child "stupid" in front of the class. The situation was only resolved following "extensive conversations," coaching, and support from Sorenson-Howe. In early 2018, a parent called and spoke with Van Gelderen about how her child felt "miserable" and "targeted" in Andersson's class. The student's mother expressed surprise that Andersson had no problem with the child moving to another class. Shortly thereafter, a parent complained to Sorenson-Howe that she was frustrated with how her son was being treated in class and how he felt targeted and disliked by Andersson. In February 2018, two teachers also complained to Sorenson-Howe and Van Gelderen about Andersson's behavior towards them. According to the teachers, Andersson intimated that she knew that they had revealed the contents of her Facebook page to Sorenson-Howe (a claim they denied) and suggested that they would get in trouble for "tattling," which made the teachers uncomfortable and anxious. One of the teachers also felt that she

had to get Andersson's approval for any idea before even suggesting it for wider consideration "because [she felt] like [Andersson] is angry about every decision" the teacher made. The Notice disclosed many further incidents supporting that Andersson treated students and colleagues in a disrespectful manner, contrary to the policies of the governing board of the District, its Code of Ethics, and the California Standards for the Teaching Profession.

Andersson does not meaningfully dispute the conduct set forth in the Notice but simply asserts that the incidents therein are "untrue or unfairly characterized." "[A]n issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation] . . . ." (*Sinai Memorial Chapel v. Dudler, supra,* 231 Cal.App.3d at p. 196.)

Andersson contends that the District's reasons for issuing a negative performance review were "false and pretextual" because she had not previously received a negative performance review or written discipline during her 20-year career and because of the timing of the adverse actions.[6] However, the undisputed evidence does not support that the complaints identified in the Notice were unprecedented. A confidential memorandum from June 2010 records complaints received from two sets of parents whose children felt poorly treated and picked on by Andersson and who requested that their children not be placed in Andersson's class again. Andersson signed the memorandum.[7] Further, months

[6] We note that, "[u]nder section 1102.6, a plaintiff does not need to show that the employer's nonretaliatory reason was pretextual." (*Lawson, supra,* 12 Cal.5th at pp. 715–716.)

[7] The independent investigation report states that there was also a memorandum dated October 2010 documenting Andersson's violation

before Andersson made any of her disclosures, Sorenson-Howe remarked in an email to Morse that she had been told that Andersson "has a personnel/HR file that is thick" when she entered the District.

Andersson also presents a declaration from a former District employee who vaguely asserted that Sorenson-Howe mischaracterized facts relating to that employee's work performance and attributed a fabricated statement to the employee. However, Andersson identifies no evidence suggesting that any of the parents, students, behavior support specialists, or teachers "fabricated" the incidents described in the Notice. The results of the independent investigation, which involved interviews with many parents and teachers, support that they were not fabricated.

Andersson further contends that certain isolated incidents of misconduct in the Notice "border[] on the absurd." However, Morse repeatedly emphasized in her undisputed deposition testimony that it was not any single incident that justified the negative performance review, but the sum of the behaviors reflected in the Notice. Andersson does not meaningfully respond to this contention.

Andersson suggests that the negative performance review is not legitimate because Sorenson-Howe observed Andersson teaching in November 2017 and gave her positive feedback. However, Sorenson-Howe received multiple additional complaints from parents of students and Andersson's colleagues after she

---

of a District Civility Policy and California Standard for the Teaching Profession, which was signed by Andersson and others. However, this document does not appear to be included in the record.

made this positive report, including from a parent whose child stated that Andersson behaves differently towards students when other adults are present in the classroom. Indeed, most of the specific incidents set forth in the Notice occurred after that date.

Finally, Andersson contends that the Notice and negative performance review were not legitimate because much of the unprofessional conduct identified was not discussed with her at the time it took place. Although there is a factual dispute as to whether Sorenson-Howe contemporaneously discussed all the issues identified in the Notice with Andersson, Andersson concedes that Sorenson-Howe discussed at least six of the incidents described in the Notice with her at the time they occurred. Several of the incidents in the Notice that Andersson claims were never raised to her were conversations between Andersson and Van Gelderen or Sorenson-Howe. Further, Andersson does not claim that she was unaware any of the actions described were inappropriate or unprofessional at the time they took place. Indeed, much of the alleged misconduct that Andersson claims she was not informed of was of a similar nature to misconduct that was discussed with her. For example, a jury could not reasonably find that Andersson was unaware that making unsupportive and embarrassing comments about a student in front of the class was inappropriate after she received feedback and coaching in connection with an earlier complaint that she had stated in front of the entire class that M.E. had gotten all the math problems wrong.

*Vatalaro v. County of Sacramento* (2022) 79 Cal.App.5th 367 is instructive. The plaintiff, who had been promoted to a new position that was probationary for six months, claimed that she had been released from probation for complaining that her duties

were not consistent with civil service rules. (*Id.* at p. 376.) In response, the defendant argued that it had released the plaintiff for insubordination, disrespect, and dishonesty. (*Id.* at pp. 376, 384.) The employer prevailed on summary judgment and the Third District affirmed on the grounds that the employer had legitimate, nonretaliatory reasons to release the plaintiff from probation. (*Id.* at p. 377.) The court observed that the plaintiff "never meaningfully disputed the alleged act of dishonesty," or "the alleged acts of disrespectful and insubordinate conduct," many of which were reflected in "the undisputed evidence of her emails." (*Id.* at pp. 384–385.) Indeed, during a call with her supervisor, the plaintiff "appeared to at least acknowledge that she had been 'difficult' to work with, 'distant,' and 'unwilling to cooperate.' " (*Id.* at p. 386.) Although the plaintiff argued that the defendant's reasons for releasing her from probation "were 'factually baseless' because she 'was a competent employee,' 'was never coached or disciplined,' and 'was never provided assignments where she could manage or provide leadership,' " the Third District concluded that these arguments were "either immaterial or lack[ed] evidentiary support." (*Ibid.*) The court noted that the plaintiff's "general competency as an employee is not material to this case, which concerns the [defendant's] adverse employment action based on her 'insubordinate, disrespectful, and dishonest' conduct." (*Ibid.*) It concluded that her claims that she was not given managerial tasks was refuted by the record and that the record further indicated that she was coached, albeit not in writing. (*Id.* at pp. 386–387.) Considering these circumstances, *Vatalaro* affirmed an order granting defendant's motion for summary judgment under Labor Code section 1102.6. (*Id.* at pp. 387–388.)

Here, as in *Vatalaro*, many of the complaints from parents or other teachers are reflected in the undisputed evidence of emails received by Sorenson-Howe or Van Gelderen. Andersson similarly makes no attempt to factually dispute the misconduct alleged against her that formed the basis of the District's negative performance review. Moreover, it is undisputed that Andersson also received "extensive" coaching and feedback, even if not in connection with every single incident raised in the Notice. Thus, "[w]e find . . . that the [District] presented sufficient undisputed evidence to satisfy its burden under section 1102.6 on summary judgment. We also find that [Andersson] failed to raise any triable issue of material fact that would preclude summary judgment in this case." (*Vatalaro v. County of Sacramento*, *supra*, 79 Cal.App.5th at p. 386.)

4. **Andersson forfeits her appeal of the IIED and NIED causes of action.**

In her opening brief, Andersson does not identify the elements of the IIED and NIED causes of action or cite legal authority in support of her claim that the court erred in its rulings with respect to these causes of action.[8] "The failure to

---

[8] The sole authorities Andersson cites in the portion of her opening brief addressing the IIED and NIED causes of action are the statutes under which she brought her retaliation causes of action. Because a claim cannot be maintained against a public entity unless the tort is authorized by statute (Gov. Code § 815, subd. (a)), Andersson contends that her "IIED and NIED claims [against the District] are wholly grounded in Labor Code § 1102.5 and Education Code §[] 44110 et seq." However, the referenced sections of the Labor Code and Education Code only provide for damages for violations of those same statutes. We find no indication that they also authorize damages for common

37

provide legal authorities to support arguments forfeits contentions of error." (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948; accord, *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 689 ["asserted grounds for appeal that are unsupported by any citation to authority and that merely complain of error without presenting a coherent legal argument are deemed abandoned"].) "Without a statement of the elements of a cause of action, supported by authority, counsel cannot establish whether triable issues of fact exist as to [that] cause of action." (*Ewald*, at p. 949.)

With respect to the IIED cause of action against Sorenson-Howe, Andersson asserts that Sorenson-Howe acted in an extreme and outrageous fashion that exceeded "normal personnel management activity" but does not include any citations to the record. Any statement in a brief concerning matters that are in the appellate record, whether factual or procedural, whether in the statement of facts, the procedural history, or the argument portion of the brief, must be supported by a citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [record citations in statement of facts do not cure failure to include record citations in argument portion of brief]; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 [same].) Andersson's reference to a prior portion of her brief does not cure this failure. "To provide record citations for alleged facts at some points in a brief, but not at others, frustrates the purpose of [Rule 8.204(a)(1)(C)], and courts will decline to consider any

---

law torts, and Andersson fails to cite any authority or advance any argument to that effect.

factual assertion unsupported by record citation *at the point where it is asserted.*" (*Alki*, at p. 590, fn. 8, italics added.) Even if we were inclined to overlook that failure, Andersson furnishes no law with which we may determine what "normal personnel management activity" is, or whether she has created a triable issue of material fact as to whether Sorenson-Howe's conduct was extreme or outrageous. Andersson similarly fails to identify any authority supporting her contention that the Labor Code and Education Code create a duty of care (specifically, a duty not to retaliate) for purposes of a common law negligence claim.

Although Andersson includes some authority in her reply brief, she again fails to identify the elements of the IIED and NIED causes of action. Andersson contends that governmental immunity does not apply without specifying whether she is talking about the District, Sorenson-Howe, or both, and does not identify or discuss the relevant statutes concerning governmental immunity. Further, the scant record citations included are to the parties' briefing of these issues below. The parties' arguments are not evidence and cannot create a triable issue of material fact. (See *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139 ["Statements and arguments by counsel are not evidence. [Citations.]"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [citation to footnote of memorandum of points and authorities "obviously is not to admissible evidence in the record that indicates a triable issue of fact exists"].)

"An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106, accord, *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court "will not develop the appellants' arguments for

39

them"].) We conclude that Andersson has forfeited her appeal as to the IIED and NIED causes of action.

**DISPOSITION**

The judgment is affirmed. The defendants shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


HEIDEL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

41